**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**


**CIVIL ACTION NO. 1:15-cv-123-GBL-IDD**


**BK NO. 13-13389-BFK (Adv. 14-01017-BFK)**
**In re: In the Matter of Marc R. Labgold**

**MARC R. LABGOLD,**

**Appellant,**

**v.**

**JUDY A. ROBBINS,**
**Office of the U.S. Trustee, Region 4,**

**Appellee.**

**Appeal from the U.S. Bankruptcy Court**
**For the Eastern District of Virginia**
**(Alexandria Division)**


**BRIEF OF APPELLANT MARC R. LABGOLD[1]**

Richard W. Driscoll, Esq. (VSB No. 43469)
Driscoll & Seltzer, PLLC
300 N. Washington St., Suite 610
Alexandria, VA 22314
703.879.2601 Office
703.997.4892 Facsimile
rdriscoll@driscollseltzer.com

Linda D. Regenhardt, Esq.
Linda Regenhardt, L.L.C.
100 N. Pitt St., Suite 206
Alexandria, VA 22314
703.608.5634
703.518.9931 (fax)
regenhardtl@gmail.com

---

[1]     Citations in this Brief are incomplete.  Appellant will replace with corrected version promptly.

*Counsel for Appellant, Marc R. Labgold*

**TABLE OF CONTENTS**

| DOCUMENT | PAGE |
|---|---|
| Table of Authorities | 3 |
| I.      JURISDICTIONAL STATEMENT | 4 |
| II.     ISSUES PRESENTED | 5 |
| III.    STATEMENT OF THE CASE | 6 |
| IV.     SUMMARY OF ARGUMENT | 13 |
| V.      ARGUMENT | 15 |
|      A.      BANKRUPTCY CODE SECTION 727(a)(2)(A) | 15 |
|      B.      THE BANKRUPTCY COURT COMMITTED ERROR IN REJECTING THE APPELLANT'S ESTATE PLANNING DEFENSE | 16 |
|           1.      The Bankruptcy Court's Reliance on the Transcript of the First Creditor's Meeting Constitutes Error as a Matter of Law | 18 |
|           2.      The Bankruptcy Court's Conclusion that Mr. Sandground Did Not Have Expertise in Estate Planning is Clearly Erroneous | 19 |
|           3.      The Bankruptcy Court's Finding that Mr. Sandground Did Not Ask to See a Copy of the Debtor's Existing Will is Clearly Erroneous | 20 |
|           4.      The Bankruptcy Court's Finding that Mr. Sandground Did Not Render a Bill for Estate Planning Services is Clearly Erroneous | 21 |
|           5.      The Bankruptcy Court's Finding of a Conflict in Testimony as to Whether Dr. Labgold had a Will at the Time of the Transfer is Clearly Erroneous | 21 |
|      C.      THE BANKRUPTCY COURT COMMITTED REVERSABLE ERROR BY REJECTING APPELLANT'S TESTIMONY REGARDING AN ABILITY TO SATISFY A JUDGMENT IN THE PENDING CALIFORNIA LITIGATION | 22 |

| | | | |
|---|---|---|---|
| | 1. | The Bankruptcy Court's Finding that Appellant Lacked a Reasonable Belief that He Could Satisfy a Judgment is Clearly Erroneous | 23 |
| | 2. | The Bankruptcy Court's Finding that Appellant Understood that the Deed of Gift Placed his Property Beyond the Reach of his Creditors is Clearly Erroneous and an Error of Law | 25 |
| VI. | RELIEF REQUESTED | | 27 |

## TABLE OF AUTHORITIES

| CASES | PAGE |
|---|---|
| *Cipolla v. Roberts (In re Cipolla)*, 476 Fed. Appx. 301 (5th Cir. Tex. 2012) | 28 |
| *Farouki v. Emirates Bank Int'l*, 14 F.3d 244, 249 (4th Cir. Va. 1994) | 15, 17 |
| *Gilbane Bldg. Co. v. Fed. Reserve Bank Of Richmond*, 80 F.3d 895 (4th Cir. 1996) | 5 |
| *Gold v. Laines (In re Laines)*, 352 B.R. 397 (Bankr. E.D. Va. 2005) | 18, 21, 22 |
| *In re Kuntz*, 233 B.R. 580 (B.A.P. 1st Cir. 1999) | 27 |
| *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300 (2d Cir. 1996) | 15 |

| STATUTES | PAGE |
|---|---|
| 11 U.S.C. § 727 | *passim* |
| 28 U.S.C. § 157 | 4 |
| 28 U.S.C. § 158 | 4 |
| 28 U.S.C. § 1334 | 4 |
| Virginia Code § 64.2-412 | 20, 21, 22 |

| OTHER AUTHORITES | PAGE |
|---|---|
| Rule 6 of the Federal Rules of Civil Procedure | 14 |
| Bankruptcy Rule 8002 | 5 |
| Bankruptcy Rule 8003 | 5 |
| Federal Rule of Evidence 401 | 20 |

## I.   <u>JURISDICTIONAL STATEMENT</u>

A.      The basis for subject matter jurisdiction in the Alexandria Division of the U.S. Bankruptcy Court for the Eastern District of Virginia's (the "Bankruptcy Court") is 28 U.S.C. § 1334(a), the August 15, 1984 Order of Reference for the Eastern District of Virginia, 28 U.S.C. § 157, and 11 U.S.C. § 727(a). The underlying case is an adversary proceeding filed by the U.S. Trustee against Debtor/Appellant in bankruptcy; a core proceeding in the Bankruptcy Court under 28 U.S.C. § 157(b)(2)(J).

B.      This Court has jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 158 and Bankruptcy Rule 8003.  This appeal arises from the final judgment, order, and/or decree (and all related findings of fact and conclusions of law) issued by the Honorable Brian F. Kenney in the underlying adversary proceeding on January 15, 2015 (Docket Nos. 48 and 49).  Pursuant to the final judgment, Appellant was denied a discharge from bankruptcy under 11 U.S.C. § 727(a).

C.      Appellant noticed this appeal on January 29, 2015.  Pursuant to Bankruptcy Rule 8002(a), the appeal is timely.

II.   **ISSUES PRESENTED**

    A.   WHETHER THE BANKRUPTCY COURT COMMITTED ERROR IN REJECTING THE APPELLANT'S ESTATE PLANNING DEFENSE. THIS ISSUE PRESENTS QUESTIONS OF BOTH FACT AND LAW. THE FACTUAL SUB-ISSUES ARE REVIEWED BY A CLEARLY ERRONEOUS STANDARD, AND LEGAL CONCLUSIONS DERIVED FROM THOSE FACTS ARE REVIEWED *DE NOVO*. *Gilbane Bldg. Co. v. Fed. Reserve Bank Of Richmond*, 80 F.3d 895, 905 (4th Cir. 1996).

    B.   WHETHER THE BANKRUPTCY COURT COMMITTED ERROR IN REJECTING APPELLANT'S TESTIMONY REGARDING AN ABILITY TO SATISFY A JUDGMENT IN THE PENDING CALIFORNIA LITIGATION. THIS ISSUE PRESENTS QUESTIONS OF BOTH FACT AND LAW. THE FACTUAL SUB-ISSUES ARE REVIEWED BY A CLEARLY ERRONEOUS STANDARD, AND LEGAL CONCLUSIONS DERIVED FROM THOSE FACTS ARE REVIEWED *DE NOVO*. *Gilbane Bldg. Co. v. Fed. Reserve Bank Of Richmond*, 80 F.3d 895, 905 (4th Cir. 1996).

III.     **STATEMENT OF THE CASE**

**Background**

1.       Appellant, Marc R. Labgold ("Dr. Labgold") is the debtor in the underlying case.

2.       Dr. Labgold is a patent attorney who holds a Ph.D. in chemistry and molecular biology from Caltech and a *Juris Doctor* degree from The George Washington University School of Law.

3.       Dr. Labgold's legal career has been focused on patent law.  He is a member of the Georgia, D.C. and Patent Bars.

4.       During his career, Dr. Labgold has been a partner in a number of law firms, including Oblon Spivak, Long, Aldridge & Norman, Piper Marbury Rudnick & Wolfe, and Patton Boggs. During 2005, Dr. Labgold was the second or third highest compensated partner at Patton Boggs, with an annual income in excess of $2,000,000.

**Antara Biosciences, Inc.**

5.       In early 2006, Dr. Labgold took a leave of absence from Patton Boggs to join a newly formed biotechnology company, Antara Biosciences, Inc. ("Antara"). During his tenure, Dr. Labgold served as a director of Antara and its Chief Executive Officer (CEO).

6.       While affiliated with Antara, Dr. Labgold made personal loans to the company, worked without compensation as well as contributing his own intellectual property. Antara experienced financial difficulties, and by May 2007, Antara closed its operations.

7.       Appellant resigned as a director and as CEO of Antara in July 2007.

8.       In the Summer of 2009, Dr. Labgold formed his own law firm, Marc R. Labgold, P.C.  As a sole practitioner, Appellant functioned as a coordinator for patent litigation by acting

as a facilitator for his clients, law firms that the clients engage, and expert witnesses in patent litigation.

**The California Litigation**

9.     In 2010, the former employees of Antara brought suit, initially against Dana Ichinotsubo and Antara, in the Superior Court for the State of California, Santa Clara County (*Ammini v. Ichinotsubo et al.*, Case No. 1-10-cv-167069) (the "California Litigation").

10.     In June 2010, Antara filed a voluntary petition under Chapter 7 in the U.S. Bankruptcy Court for the Central District of California (*In re Antara Biosciences, Inc*., Case No.1:10-bk-16923-VK). When Antara filed for bankruptcy protection, a number of employees claimed they were owed certain unpaid wages, paid time off ("PTO") and other benefits that alleged had not been paid to them by the company and loans made to the company.

11.     Initially, the California Litigation was limited to the former employees' claims for unpaid wages and other amounts allegedly owed to the plaintiffs by the company, seeking damages in excess of $1,000,000.  In September 2012, the former employees amended their lawsuit to include Dr. Labgold as a defendant.

12.     Dr. Labgold was represented in the California Litigation by the Keker & Van Nest law firm.  In the Fall and Winter of 2012, the bills from Keker & Van Nest were in the $20,000 to $30,000 range per month. Appendix[2] 811 (*See, e.g*., Check No. 2198, 8/7/2012, $11,986.75; Check No. 2204, 9/5/2012, $22,187.99; Check No. 2217, 11/2/2012, $38,312.16; Check No. 2227, 12/11/2102, $32,727.64).

13.     Beginning in early 2013, bills from Keker & Van Nest increased substantially, to approximately $60,000 to $70,000 per month. *Id.* (*See, e.g.,* Check No. 2234, 1/15/2013,

---

[2]     Hereafter, references to the Appendix will be designated as "App.".

$52,318.51; Check No. 2242, 2/25/13, $38,552.71; Check No. 2246 2/28/2013, $69,105.93; Check No. 2257, 3/31/2013, $73,378.35).

### Deed of Gift for the Compass Point Lane Property

14.     Appellant has owned his residence at Compass Point Lane, Reston, Virginia, since 2004.

15.     On December 21, 2012, the Debtor married his fiancé of nearly eight years, Taryn Waiter.  App. 684.  The wedding was held in the Bahamas. Def. Ex. 25. Mark B. Sandground, Sr., a friend, advisor and attorney for Dr. Labgold, attended the wedding and served as his witness. *Id.*

16.     Following the marriage, Mr. Sandground counseled Appellant to prepare a new will, obtain life insurance and make other estate planning decisions. Trial Transcript ("Tr.") Day 2, p. 12; Day 3, p. 21.  Among the estate planning recommendations by Mr. Sandground was that Dr. Labgold transfer his residence to he and his wife to be held tenants by the entirety.  *Id.*

17.     On January 7, 2013, the Debtor executed a Deed of Gift, transferring ownership of the property located at 2257 Compass Point Lane, Reston, VA 20191, from himself as Grantor to himself and his wife as tenants by the entirety, as Grantees. App. 681. The Deed of Gift was recorded by Mr. Sandground's office in the public land records of Fairfax County on January 9, 2013. *Id.*

18.     The Deed of Gift was conceived and prepared by Mark B. Sandground in light of Dr. Labgold's imminent international business travel, motivated by Mr. Sandground's concerns that Dr. Labgold's wife would not otherwise be provided for if tragedy should befall the Appellant. Tr. at Day 3, pp. 5-6.

19.     The sole purpose of the Deed of Gift was "estate planning" and was executed by Appellant on the advice and recommendation of his attorney, Mr. Sandground. *Id.*

20.     Prior to Mr. Sandground's recommendation, Dr. Labgold was unfamiliar with the deed of gift conveyance or its effect.  Tr. at Day 2, p. 13.

21.     As a domestic relations attorney, Mr. Sandground was aware that the provisions of Dr. Labgold's earlier will regarding conveyances to his spouse were revoked upon his divorce. Tr. at Day 3, p. 21

22.     The estate planning purpose was to assure that in the event that Dr. Labgold predeceased his wife, the Compass Point property would transfer to her and she would be able to remain in their home.  Tr. at Day 2, p 105.

23.     Following Dr. Labgold's return from Japan, Mr. Sandground reminded him of the need to complete his estate planning on several occasions.  Tr. at Day 3, p. 5-6.

24.     Dr. Labgold explained that in executing the Deed of Gift, he had no intent to hinder, delay or defraud his creditors.  Tr. at Day 2, p. 101.

25.     At the time of the Deed of Gift, Dr. Labgold reasonably believed that the California litigation would be settled through mediation that had been initiated by the plaintiffs in that action. Tr. at Day 2, p. 11.  Ultimately, the California Litigation was not resolved through the mediation effort.  Tr. at Day 2, p. 14.

26.     In the event of an adverse result in the California Litigation, Dr. Labgold believed that he would be in a position to satisfy a judgment, either together with the co-defendant, Mr. Ichinotsubo, or on his own.  D 2, p. 11.

27.     When Mr. Sandground prepared the Deed of Gift, he believed that the Appellant was engaged in a prosperous law practice. Tr. at Day _____  At no time was there any

discussion on bankruptcy, nor was the Deed of Gift executed for any purpose other than estate planning.  Tr. at Day _____

**Appellant's Change in Financial Condition**

28.     As of the time of the Deed of Gift, Appellant's law practice was generating substantial gross revenues in excess of $200,000 per month.  App. 699 - 808.

29.     As of the time of the Deed of Gift, Appellant was making all debt payments as they became due.  Tr. at Day _____.

30.     In early Spring of 2013, Dr. Labgold successfully resolved several pending litigation matters being handled on behalf of his clients, which significantly reduced his workload and monthly cash flow.  Tr. at Day 2, p. 14-15

31.     In early Spring of 2013, mediations efforts to settle the California Litigation proved to be unsuccessful.  *Id.*

32.     As a result of the failed mediation, costs associated with the California Litigation increased substantially to the range of $50,000 to $70,000 per month.  *Id.*

33.     In late April/early May of 2013, Wells Fargo assumed control of the Wachovia bank system and declined to renew Dr. Labgold's outstanding note, converting it from an annual payment of interest to a monthly payment of principal and interest in the approximate amount of $22,000.  Tr. at Day 2, p. 15

34.     The cumulative effect of Dr. Labgold's changed financial circumstances was a monthly cash flow deficit.   Tr. at Day 2, p 14-15; App. 763.

35.     In late April/early May of 2013, Appellant discussed his financial circumstances with Mr. Sandground, who suggested he consult with a bankruptcy attorney.   Tr. at Day 2 p 15-16.

*36.* Mr. Sandground introduced Dr. Labgold to Linda Regenhardt, who became his bankruptcy counsel. *Id.*

**Appellant's Bankruptcy Filing**

37. On July 23, 2013, Dr. Labgold filed his bankruptcy petition under Chapter 7.

38. On the Summary of Schedules, Dr. Labgold listed $2,817,493.95 in assets and $6,630,453.94 in liabilities, a largest portion of which was his domestic support obligations ($2,807,500). App. 6.

39. On Schedule A (Real Property) of the petition, the Compass Point Lane property is listed as being jointly owned by Appellant and his wife. *Id.* at ____.

40. On Schedule C, the value of the Compass Point Lane property is listed as exempt meaning that he claimed the property as exempt from his individual creditors because it was held as tenants by the entirety with his wife. *Id.* at 13.

41. Section 10(a) of the Statement of Financial Affairs failed to disclose the Compass Point Lane property as having been transferred within two years immediately preceding the commencement of the bankruptcy.

42. Ms. Regenhardt testified that the entries on Schedule C and the Statement of Financial Affairs were her mistakes. Tr. at Day 2, p.211-12

*43.* Appellant fully disclosed the transfer of the Compass Point Lane property to Ms. Regenhardt. Tr. at Day 2, p 16. Ms. Regenhardt confirmed this disclosure and fully intended to include it bankruptcy petition. Tr. at Day 2, p. 211-12 and 225-26. She testified that it was simply a mistake not to have included this transfer. *Id.*

**The First Meeting of Creditors**

44.     During the first meeting of creditors, the Trustee requested a copy of the deed for the property. [cite to King testimony]

45.     The same day as the first meeting of creditors, Appellant provided a copy of the Deed of Gift to Ms. Regenhardt.  Tr. at Day 2, p 18-20; App. 810.

46.     Ms. Reganhardt forwarded the Deed of Gift to the Chapter 7 Trustee the following day.  Tr. at Day 2, p 209.

47.     Donald King, the Chapter 7 Trustee, testified that Appellant's response to the request for the Deed of Gift was not the type of behavior that is normally exhibited by a debtor attempting to conceal an asset.  Tr. at Day 2, p. 201.

**Procedural History**

48.     On January 27, 2014, the U.S. Trustee filed a Complaint objecting to discharge in the Appellant's bankruptcy pursuant to Section 727(a)(2)(A) of the Bankruptcy Code, alleging, *inter alia*, that Dr. Labgold transferred the Compass Point Lane property with the intent to hinder, delay or defraud his creditors.  App. 135.

49.     Dr. Labgold filed an Answer denying the U.S. Trustee's allegations. App. 137.

50.     On December 11, 12 and 15, 2014, a trial was conducted before the Honorable Brian F. Kenney of the U.S. Bankruptcy Court for the Eastern District of Virginia (Alexandria Division).

51.     On January 14, 2015, the Bankruptcy Court issued its Findings of Fact and Conclusions of Law indicating an intent to enter an Order denying the Appellant a discharge pursuant to Bankruptcy Code Section 727(a)(2)(A), based on the Deed of Gift for the Compass Point Lane property.

52.     On January 15, 2015, the Bankruptcy Court issued its Order denying the Appellant a discharge pursuant to Bankruptcy Code Section 727(a)(2)(A), based on the Deed of Gift for the Compass Point Lane property.

53.     On January 29, 2015, the Appellant timely noticed an appeal to this Court for review.

54.     On February 2, 2015, this Court issued the Briefing Schedule setting the filing date for Appellant's brief as February 17, 2015.  However, due to inclement weather, the Office of Personnel Management and the Clerk's Office were closed.  Therefore, pursuant to Rule 6 of the Federal Rules of Civil Procedure, the deadline was extended to February 18, 2015.

55.     On February 18, 2015, Appellant timely filed this Brief.


IV.     **SUMMARY OF THE ARGUMENT**

Appellant respectfully submits that the Bankruptcy Court's denial of a discharge pursuant to Section 727(a)(2)(A) of the Bankruptcy Code should be reversed on the basis of clear error of fact and law.  The denial of a discharge is an extreme penalty that is not warranted on the record in this case.

First, the Court committed clear error in rejecting Appellant's estate planning defense. The unrebutted evidence of record demonstrates that the Deed of Gift, which transferred the ownership of Appellant's residence to himself and his wife, was prepared at the suggestion of counsel within a month of the marriage.  The record demonstrates that the sole intent of the transfer was for estate planning purposes.  The Bankruptcy Court's error is a result of a series of errors of fact an law, including: (a) finding that no estate planning documents were prepared; this despite the Court's precedent that a Deed of Gift is a legitimate form of estate planning; (b) finding that Appellants counsel, an attorney with 50 years of experience in family law and

general practice, was not qualified to provide the relied upon legal advice; (c) finding that Appellant had not been charged for the legal services – a erroneous finding contradicted by the record; (d) the Court's reliance upon evidence that was not admitted and objected to; (e) the Court's finding that Mr. Sandground did not ask or was unaware of Appellants prior will (despite clear evidence to the contrary); and (f) the Court's focus on a non-existent "conflict" in Mr. Sandground's and Dr. Labgold's testimony.

Second, the Court committed clear error in committed reversable error by rejecting appellant's testimony and evidence regarding an ability to satisfy a judgment in the pending California Litigation. The Court's erroneous conclusion arises from its focus on the financial condition of the Appellant *at the time of the petition filing*, *as opposed to the time of the transfer*. The evidence of record clearly supports Appellant's ability to satisfy a judgment as well as providing clear evidence of the change of circumstances that occurred in the intervening period between the transfer and the filing of the bankruptcy petition.

Finally, the Court committed clear legal error in holding Appellant to a higher standard -- concluding he was fully cognizant of Virginia property and trusts and estate law -- simply because he went to law school. On the one hand, the Court concluded that Mr. Sandground, who has been practicing family law in Virgina for 50 years, which includes the interrelated estate issues, was not qualified to counsel Appellant concerning the Deed of Gift because Mr. Sandground has no "special expertise in estate planning." In contrast, despite finding that the Appellant's entire legal career has focused on patent law, and clear evidence that he no experience in the areas of trusts and estates or property law, the Court concluded that it is not credible that he did not understand the legal effect of the transfer in question. Clear precedent rejects the application of such higher standards as clear error. Moreover, Courts have concluded

that such error is not harmless.  As in the *Kuntz* and *Cipolla* cases, *infra*, the Bankruptcy Court's conclusion that Dr. Labgold's law degree provided a basis to presume knowledge as to the effect on creditors is clearly erroneous.  More importantly, this error of fact and law colored the Bankruptcy Court's conclusion that Dr. Labgold intended to hinder, delay or defraud his creditors, which ignored the objective evidence to the contrary that was presented to the court.

## V.   <u>ARGUMENT</u>

### A.   **BANKRUPTCY CODE SECTION 727(a)(2)(A)**

Section 727(a)(2)(A) of the Bankruptcy Code reads, in relevant part, as follows:

> The court shall grant the debtor a discharge, unless –
>
> > (2)   the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
> >
> > > (A)   property of the debtor, within one year before the date of the filing of the petition;

Because the penalty imposed by Section 727 (*i.e.*, the denial of discharge) is ***extreme***, objections to discharge are construed strictly against the objecting party and liberally in favor of the debtor. *See State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1310 (2d Cir. 1996). The U.S. Trustee, as the party objecting to Dr. Labgold's discharge, bears the burden of proving her objection by a preponderance of the evidence. *See Farouki v. Emirates Bank Int'l*, 14 F.3d 244, 249 (4th Cir. Va. 1994). "Although the burden may shift to the debtor to provide satisfactory,

explanatory evidence once the creditor has established a *prima facie* case, the ultimate burden rests with the creditor." *Id*.

**B.    THE BANKRUPTCY COURT COMMITTED ERROR IN REJECTING THE APPELLANT'S ESTATE PLANNING DEFENSE**

On January 7, 2013, the Debtor executed a Deed of Gift, transferring ownership of the Compass Point Lane property from himself as Grantor to himself and his wife as tenants by the entirety. During trial, Appellant provided a full explanation for the Deed of Gift as an estate planning instrument.    Indeed, the Bankruptcy Court recognizes that a Deed of Gift is a legitimate form of estate planning:

> **There is nothing wrong, in and of itself, in transferring pre-marital real property owned by the husband to the husband and wife as tenants by the entirety upon marriage**. It is a substitute for a will and has other advantages that a will cannot provide such as the necessity for both husband and wife to execute any deed conveying or encumbering the property. It is a very common manner in which property is held by a married couple.

*Gold v. Laines (In re Laines)*, 352 B.R. 397, 404 (Bankr. E.D. Va. 2005) (emphasis added).

Appellant provided an extensive explanation for the use of this legitimate estate planning tool:

a)    Dr. Labgold and Taryn Waiter were married on December 21, 2012. App. 684.

b)    Mark Sandground thereafter advised Dr. Labgold to prepare a new will, obtain life insurance and make other estate planning decisions. Tr. at Day 2, p. 12; Day 3, p. 21.

c)    As an immediate step, Mr. Sandground advised the Appellant to execute a Deed of Gift transferring title to the Compass Point Lane property from Dr. Labgold individually to he and his wife as tenants by the entirety.  *Id.*

16

d)   The Deed of Gift was solely Mr. Sandground's idea and was not motivated by Appellant.  Tr. at Day 3, p. 5.

e)   The Deed of Gift was intended to implement an element of "estate planning" for the Appellant by protecting Mrs. Labgold's right to remain in the home should Dr. Labgold predecease her. Tr. at Day 3, pp. 5-6.

f)   Dr. Labgold was about to embark on an extensive period of business travel to Japan and Mr. Sandground was concerned that he would leave without providing for his new wife in the event of a tragedy.  *Id.*

g)   The sole intended purpose of the transfer was to ensure that, if the Appellant were to die, the Compass Point Lane property would transfer to Mrs. Labgold and she would be able to remain in their home.  Tr. at Day 2, p 105.

h)   The Deed of Gift was promptly recorded in the public land records of Fairfax County on January 9, 2013.

i)   Prior to Mr. Sandground's advice, Dr. Labgold was unfamiliar with the deed of gift conveyance or its effect.  Tr. at Day 2, p. 13

j)   The provisions of Dr. Labgold's earlier will regarding conveyances to his spouse were revoked by operation of law upon the entry of the divorce decree.  Tr. at Day 3, p. 21.

k)   Following Dr. Labgold's return from Japan, Mr. Sandground reminded him of the need to complete his estate planning on several occasions.  Tr. at Day 3, p. 5-6.

l)       Dr. Labgold explained that in executing the Deed of Gift, he was merely following the advice of his attorney.  D 2, p. 101.

m)     When the Deed of Gift was prepared and executed, there was no discussion regarding bankruptcy or financial issues between Appellant and Mr. Sandground.  Day3, 22

In the face of substantial evidence supporting the estate planning nature of the transaction, the Court rejected the defense in its entirety, noting that Mr. Sandground did not testify to having any "special expertise in estate planning", did not ask to see a copy of the existing will (if one existed), did not render a bill for estate planning services and was not advised by the Appellant of the California Litigation.   [Findings/Conclusions at p. 12.]   In addition, the Bankruptcy Court included a finding of fact based on an Exhibit that was not admitted into evidence. App. 825.

      1.     <u>The Bankruptcy Court's Reliance on the Transcript of the First Creditor's Meeting Constitutes Error as a Matter of Law</u>

The Bankruptcy Court's Finding of Fact No. 38 reads in relevant part: "The Debtor and his counsel advised the Trustee that the Debtor claimed the property as exempt because it was held as tenants by the entirety with the Debtor's Wife."   [Findings/Conclusions at p. 8.] However, Plaintiff's Exhibit 5 was never admitted into evidence.  In fact, it was used at trial for only one purpose, to refresh the Chapter 7 Trustee's recollection of the events that occurred at the meeting.  [D 1, 200-201]  Neither Plaintiff nor Defendant ever offered Plaintiff's Exhibit 5 into the record.  Moreover, Defendant objected to the admissibility of the transcript based on hearsay and Federal Rule of Evidence 401.   App. 151. Accordingly, reliance on Plaintiff's Exhibit 5 was a clear error of law.

The Bankruptcy Court's reliance of Plaintiff's Exhibit 5 is particularly egregious as it is used to find that the ***Appellant*** advised the Trustee that the property was claimed to be exempt. This finding undoubtedly colored the lenses of Bankruptcy Court's interpretation that the Appellant intended to claim the property as exempt to hinder creditors (which was never the Appellant's intent).   In fact, review of the transcript discloses that Dr. Labgold did not understand the Trustee's inquiry.   As a result, it was his counsel, Ms. Regenhardt, who responded regarding the exemption.  Ms. Regenhardt's testimony at trial clarified that she was fully aware of the date of the transfer and that the transaction was not intended to place the asset beyond the reach of the Appellant's creditors.   The Appellant's good faith intent is further demonstrated by the prompt manner in which he provided a copy of the Deed of Gift to the Trustee.  Day 2, 209

> 2.    The Bankruptcy Court's Conclusion that Mr. Sandground Did Not Have Expertise in Estate Planning is Clearly Erroneous

Mr. Sandground testified that he has over 50 years' experience as a domestic relations attorney and as a general practitioner.  [Tr. at Day ~~D~~3, p3]   Dr. Labgold testified that Mr. Sandground had prepared estate planning documents for him in the past. [Tr. at Day~~D~~ 2, p 105] Mr. Sandground also correctly recognized a deed of gift as a legitimate estate planning device. *See Gold v. Laines (In re Laines)*, 352 B.R. 397, 404 (Bankr. E.D. Va. 2005) (stating that a deed of gift is a substitute for a will).   In addition, Mr. Sandground demonstrated knowledge of existing Virginia law, noting the revocation of Dr. Labgold's earlier will by operation of law. *See* Virginia Code § 64.2-412 (divorce revokes any disposition of property made by the will to a former spouse and such property passes as if wife failed to survive the testator).    Mr. Sandground clearly understood the need to address the estate planning situation given his experience advising individuals during and after a divorce.  This experience uniquely qualified

him to assist Dr. Labgold, who was previously divorced and had not prepared a new will to apply to his recent remarriage.  Further, Mr. Sandground's expertise included recommendations to Dr. Labgold to secure life insurance and follow up requests for him to complete his estate planning tasks.  Tr. at Day 3, p 6, 21.

While Mr. Sandground did not expressly state that he possessed expertise in estate planning, his advice and representation of the Appellant demonstrate his knowledge of the subject and his broad approach to the services.  Contrary to the Court's assumption, it is not at all surprising or unexpected that he would understand such inter-related issues of estate and family law, especially given his 50+ years of practice in Virginia.  Mr. Sandground promptly prepared an effective Deed of Gift[3] that was publicly recorded without any delay, demonstrating his knowledge of the tool and the importance of filing it expeditiously.  In light of this evidence, the Bankruptcy Court's conclusion that Mr. Sandground lacked expertise is clearly erroneous.

3.     The Bankruptcy Court's Finding that Mr. Sandground Did Not Ask to See a Copy of the Debtor's Existing Will is Clearly Erroneous

The Bankruptcy Court ignored prevailing Virginia law in finding that Mr. Sandground's failure to ask for a copy of Dr. Labgold's prior will demonstrates an absence of estate planning purpose.  Findings, p. 12  It is undisputed that Mr. Sandground was counsel to the Appellant for an extensive period and assisted him with his divorce in 2004.  Pursuant to Virginia Code § 64.2-412, Mr. Sandground was aware that provisions of the will relating to dispositions of property to his former spouse were revoked by the divorce.  As such, any other beneficiaries under the will would receive an inheritance as if the former spouse had predeceased Dr. Labgold.

---

[3]      The Bankruptcy Court erroneously found that Mr. Sandground did not prepare any estate planning documents. App. 831.  However, the Deed of Gift is a recognized estate planning tool, which was prepared by Mr. Sandground to assist the Appellant with a comprehensive estate plan that was also intended to include life insurance and a new will. *Gold*, 352 B.R. at 404.

The immediate need for estate planning was limited to Dr. Labgold's wife. By implementing an estate planning strategy that immediately provided for Mrs. Labgold through the Deed of Gift, Mr. Sandground accomplished the purpose that he intended, providing for Mrs. Labgold in the event of Dr. Labgold's untimely death. [D̶ Tr. at Day 2, p. 105.] Dr. Labgold's prior estate planning, with the exception of dispositions to his former spouse, continued to be effective under Virginia Code § 64.2-412. Therefore it was not necessary for Mr. Sandground to review the existing will as it was not relevant to effectuating the estate planning purpose.

4.    The Bankruptcy Court's Finding that Mr. Sandground Did Not Render a Bill for Estate Planning Services is Clearly Erroneous

Among the reasons for not accepting the Appellant's estate planning purpose for the Deed of Gift was the Bankruptcy Court's assumption, without support, that Dr. Labgold did not make any payments to Mr. Sandground for the stated legal services. This conclusion is incorrect. Question 3 on the Statement of Financial Affairs required the Appellant to list all payments to creditors in the preceding 90 days that were more than $600. [Petition at p. 89] Appellant's response shows his payment of $3,000 on July 15, 2013. This amount represents payment for Mr. Sandground's estate planning and other services during 2013. Accordingly, the Bankruptcy Court's finding is clearly erroneous.

5.    The Bankruptcy Court's Finding of a Conflict in Testimony as to Whether Dr. Labgold had a Will at the Time of the Transfer is Clearly Erroneous

The Bankruptcy Court relies upon what it concluded was a conflict in the testimony concerning the existence of a prior will. App. 830. The Court's conclusion, and its reliance thereupon, is clear error.

The testimony given by Dr. Labgold and Mr. Sandground demonstrates that the Appellant had a preexisting will that did not provide for his new spouse. Dr. Labgold stated that he had "an existing will". [Tr. at Day 2, p. 105.] While Mr. Sandground did state that Dr.

Labgold "had not done a will" following his marriage, he also testified that he advised the Appellant that "you have to have a new will because an old will is revoked as a matter of law, in the divorce". [D3, 5, 21]  Mr. Sandground's testimony, together with Dr. Labgold's testimony under Virginia law (Virginia Code § 64.2-412), leads to only one reasonable conclusion -- that Dr. Labgold had a will prior to his divorce and had not created a new will to provide for his new wife.  Aware of Dr. Labgold's circumstances, Mr. Sandground prepared the Deed of Gift to effectuate a rationale and effective estate plan in the face of Dr. Labgold's frequent travel to Japan.  Following his return, Mr. Sandground continued to push the Appellant to finish his estate plan, but time slipped away prior to the filing of the bankruptcy petition.

The lack of conflict between Dr. Labgold and Mr. Sandground, coupled with the Court's erroneous reliance on Plaintiff's Exhibit 5, demonstrates that the Court's rejection of the estate planning defense was clearly erroneous. Contrary to the Bankruptcy Court's finding, credible evidence supporting the estate planning purpose of the transaction is overwhelming. Indeed, there is no evidence that contradicts this purpose as the sole motivation for the Deed of Gift.

### C.   THE BANKRUPTCY COURT COMMITTED REVERSABLE ERROR BY REJECTING APPELLANT'S TESTIMONY REGARDING AN ABILITY TO SATISFY A JUDGMENT IN THE PENDING CALIFORNIA LITIGATION

Dr. Labgold testified that at the time of the Deed of Gift, he believed that the California Litigation would settle during an upcoming mediation. D 2, p. 11.  He further believed that if the California Litigation did not settle and an adverse judgment was entered against him, he would be able to satisfy such a judgment, either together with the co-defendant, Mr. Ichinotsubo, or on his own.  D 2, p. 11.  The Bankruptcy Court found the Appellant's testimony to be "unconvincing."  App. 830. In making this finding, the Bankruptcy Court focused on three issues: 1) lack of any change in the Appellant's assets and liabilities between the date of the

Deed of Gift and the Bankruptcy Petition; 2) the Bankruptcy Court's view that Dr. Labgold did not advise Mr. Sandground of the California Litigation at the time of the Deed of Gift; and 3) Appellant's presumed understanding of the applicable legal issues in connection with the Deed of Gift. As explained below, the Bankruptcy Court's approach is flawed as it does not focus on the Appellant's reasonable belief at the time of the transaction, resulting in a clear error of law.

1.   The Bankruptcy Court's Finding that Appellant Lacked a Reasonable Belief that He Could Satisfy a Judgment is Clearly Erroneous

When Dr. Labgold signed the Deed of Gift, he reasonably believed that his financial future was thriving and that he would be in a position to meet future demands, including the potential for an adverse judgment. By any measure, 2012 was a financially successful year for Dr. Labgold. Gross revenues for his law firm totaled $2.3 million dollars for 2012. App. 699. The average balance for his firm's operating account was $197,000 during the same period. *Id.* Dr. Labgold's 2012 tax returns evidence an adjusted gross income of $1,062,486. App. 687. Appellant's law firm collected January 2013 gross revenues in the amount of $280,000, which foreshadowed a similarly successful year. App. 763. Dr. Labgold was not behind in any of his monthly obligations at that time. [D2,p11] In light of the foregoing, Mr. Sandground's opinion that the Appellant was engaged in a prosperous law practice when the Deed of Gift was prepared was unquestionably accurate and remains unrebutted.

In the Spring of 2013, Dr. Labgold's financial picture changed dramatically. In March and April of 2013, Appellant settled several cases he was handling for his clients. D2, p. 14-15. As a result, revenues for April and May of 2013 precipitously dropped below the monthly average. App. 763 (showing gross revenue of $164,332 in April and $74,639 in May). Also in early Spring of 2013, the mediation effort to settle the California Litigation failed and litigation activity in the case increased. D2, p. 14-15. As a result of the failed mediation, costs associated

with the California Litigation increased substantially to the range of $50,000 to $70,000 per month. *Id.*; App. 811.  Finally, in late April/early May of 2013, Wells Fargo assumed control of Wachovia bank and declined to renew an outstanding promissory note, converting it from annual interest only payments to monthly payments of principal and interest in the approximate amount of $22,000.  D2, p. 15  The confluence of these unforseeable events caused a significant deficit in Dr. Labgold's monthly cash flow that was not sustainable.  D2, p 14-15; PX 68

Although Appellant's assets and liabilities remained essentially the same during the early part of 2013, his income was reduced and the monthly cost of the Wells Fargo note and litigation expenses mushroomed to a breaking point. *Id.*  Overburdened by the cash flow shortfall, Dr. Labgold was compelled to investigate the option of bankruptcy.  However, it is vital to note that these events all occurred after the Deed of Gift, none of which were foreseeable at that time the Deed was executed.  Accordingly, it is clear error to rely upon these *post hoc* events to evaluate the reasonableness of Appellant's decision to follow the advice of his counsel and execute the Deed of Gift.

It is similarly irrelevant to evaluate Dr. Labgold's financial circumstances based on a snapshot of assets and liabilities at the time the petition was filed in July, as these facts do not accurately convey the financial circumstances at the time of the transaction in January.  Moreover, it is not the size of the liabilities that drove Appellant to bankruptcy; rather it was the dramatically increased burden of the monthly costs in conjunction with the dramatic decrease in monthly income.

Whether Dr. Labgold informed Mr. Sandground of the California Litigation at the time of the Deed of Gift is not relevant.[4]  Although the Bankruptcy Court found the absence of this

---

[4]     Even so, the question of whether Mr. Sandground had knowledge of the California Litigation is not clear.  Appellant respectfully submits that he, though not an issue prior to trial,

disclosure to be significant, the salient inquiry should have focused on the Appellant's financial condition in January of 2013 when the transaction occurred. [Findings, p15] Moreover, the Bankruptcy Court's preoccupation with this issue is contradicted by the knowledge of Ms. Regenhardt. She clearly testified to having knowledge of both the Deed of Gift transaction and the California Litigation at the time of the bankruptcy petition. [D2, 208, 211, 212, 224] Indeed, the Court affirmatively found that Dr. Labgold had not concealed the transfer. Notwithstanding her complete knowledge, Ms. Regenhardt did not testify to having any concerns regarding the Deed of Gift.

2.      The Bankruptcy Court's Finding that Appellant Understood that the Deed of Gift Placed his Property Beyond the Reach of his Creditors is Clearly Erroneous and an Error of Law

Relying solely on the fact that Appellant attended law school, the Bankruptcy Court presumed that Appellant "would have understood that the effect of a transfer of property to himself and his wife as tenants by the entirety would have been to put the property beyond the reach of the Antara creditors". App. 832. There is no evidence in the record that Dr. Labgold had any knowledge regarding the Deed of Gift or its effect. To the contrary, Dr. Labgold testified that he did not know what it was when his counsel suggested its use for estate planning purposes. [D2, 13] Likewise there is no evidence to infer that Dr. Labgold understood the effect that such a deed may have on the reach of creditors.[5] Indeed, even the Bankruptcy Court found that Appellant's entire legal career was in the field of patent law. Findings, p. 1-2. Absent

---

prepared a declaration in conjunction with a motion to compel the return of a disputed computer. Even so, certain exhibits that were admitted for other purposes reflect Mr. Sandground's knowledge of efforts to secure the return of the subject computer and his involvement relating to a subpoena to Heather Meyer in conjunction with the California Litigation. *See e.g.,* DX 162, 164.

[5]      The undisputed evidence proves there was no discussion or consideration of any possible bankruptcy event at the time the Deed was conveyed. Day 3, p22.

additional evidence, the Bankruptcy Court's conclusion is clearly erroneous and without any foundation.

There is simply no basis on which to find that Dr. Labgold understood the effect of a Deed of Gift on creditors.  In *In re Kuntz*, 233 B.R. 580, 584-85 (B.A.P. 1st Cir. 1999), a bankruptcy court found that a debtor's practice of law for 13 years meant that he "knew his obligations" in connection with notifying the court of the receipt of an asset.  On appeal, the Bankruptcy Appeal Board rejected the finding as there was no evidence to indicate any prior exposure to bankruptcy law.  *Id.*  Similarly, in *Cipolla v. Roberts (In re Cipolla)*, 476 Fed. Appx. 301, 308 (5th Cir. Tex. 2012), the Court of Appeals for the Fifth Circuit held that a bankruptcy court erred by presuming that an attorney possessed knowledge of homestead exemption laws of Texas and Missouri merely because he was an attorney.  Explaining this ruling, the Court of Appeals wrote:

> **There is simply no legal basis for applying such a broad, formal evidentiary presumption to this effect, even as to an attorney**, like Cipolla, who is licensed to practice law in both Texas and Missouri and who passed the Texas bar examination. Although there is a general "presumption that the attorney in a bankruptcy matter is competent in that law and knows what his duties are according to the bankruptcy laws," Cipolla was not acting as a lawyer on his own behalf, and there is no evidence that he ever practiced in the field of bankruptcy.

*Id.* (emphasis added).[6] **More importantly, the Fifth Circuit concluded that the bankruptcy court's error was not harmless**. *Id.*  Harm arises from the potential that the lower court could arrive at a "different conclusion had it applied the correct legal standard." *Id.*  Even with regard to an issue of credibility, the Circuit Court held that the error was not harmless:

> Here, the bankruptcy court apparently found Cipolla lacking in credibility, a determination to which we ordinarily defer. **Here,**

---

[6]    Like Cipolla, Dr. Labgold "was not acting as a lawyer on his own behalf, and there is no evidence that he ever practiced in the field of bankruptcy." *Id.*

> *however, that determination could have been influenced by the court's presumption that as a licensed and practicing attorney in both states, Cipolla must have known about the states' homestead exemptions. Further, had the bankruptcy court made a more favorable evaluation of Cipolla's credibility in the absence of this erroneous presumption, it may have found that he did not have an intent to defraud his creditors within the meaning of § 522(o).*

*Id.* (emphasis added).

As in *Kunz* and *Cipolla*, the Bankruptcy Court's conclusion that Dr. Labgold's law degree provided a basis to presume knowledge as to the effect on creditors is clearly erroneous. More importantly, this error of fact and law colored the Bankruptcy Court's conclusion that Dr. Labgold intended to hinder, delay or defraud his creditors, which ignored the objective evidence to the contrary that was presented to the court.

## VI.  RELIEF REQUESTED

Appellant Marc R. Labgold requests that the Court reverse the Bankruptcy Court's denial of discharge under Bankruptcy Code § 727(a)(2) and remand this case with appropriate instructions.

**<u>CERTIFICATE OF COMPLIANCE WITH RULE 8015(a)(7)(B) or 8016(d)(2)</u>**

    I HEREBY CERTIFY on this 18th day of February, 2015, that this Brief complies with the type-volume limitation of Rule 8015(a)(7)(B) because the Brief contains 7362 words, excluding the parts of the brief exempted by Rule 8015(a)(7)(B)(iii) or 8016(d)(2)(D).

/s/ Richard W. Driscoll

Richard W. Driscoll

February 18, 2015

Respectfully submitted,

/s/ Richard W. Driscoll

Richard W. Driscoll, Esq. (VSB No. 43469)
Driscoll & Seltzer, PLLC
300 N. Washington St., Suite 610
Alexandria, VA 22314
703.879.2601 Office
703.997.4892 Facsimile
rdriscoll@driscollseltzer.com

/s/ Linda D. Regenhardt

Linda D. Regenhardt, Esq.
Linda Regenhardt, L.L.C.
100 N. Pitt St., Suite 206
Alexandria, VA 22314
703.608.5634
703.518.9931 (fax)
regenhardtl@gmail.com

*Counsel for Appellant, Marc R. Labgold*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of February 2015, a true copy of the foregoing Brief of Appellant and associated Appendix were sent by the ECF system to all counsel of record, including:

Bradley David Jones, Esq.
Office of the U.S. Trustee
115 South Union Street, Suite 210
Alexandria, VA 22314

/s/ Richard W. Driscoll
_____
Richard W. Driscoll