# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

## CIVIL ACTION NO. 1:15-cv-123-GBL-IDD

BK NO. 13-13389-BFK (Adv. 14-01017-BFK)
In re: Marc R. Labgold

**MARC R. LABGOLD,**

Appellant,

v.

**JUDY A. ROBBINS,**
Office of the U.S. Trustee, Region 4,

Appellee.

On Appeal from the U.S. Bankruptcy Court
For the Eastern District of Virginia
(Alexandria Division)

## **REPLY BRIEF OF APPELLANT MARC R. LABGOLD**
### (CORRECTED)

Richard W. Driscoll, Esq. (VSB No. 43469)
Driscoll & Seltzer, PLLC
300 N. Washington St., Suite 610
Alexandria, VA 22314
703.879.2601 Office
703.997.4892 Facsimile
rdriscoll@driscollseltzer.com

Linda D. Regenhardt, Esq.
Linda Regenhardt, L.L.C.
100 N. Pitt St., Suite 206
Alexandria, VA 22314
703.608.5634
703.518.9931 (fax)
regenhardtl@gmail.com

*Counsel for Appellant, Marc R. Labgold*

# TABLE OF CONTENTS

| DOCUMENT | PAGE |
|---|---|
| Table of Authorities | 3 |
| I.    SUMMARY OF ARGUMENT | 4 |
| II.    ARGUMENT | 5 |
|       A.    THE BANKRUPTCY COURT'S ERRONEOUS PRESUMPTION THAT DR. LABGOLD POSSESSED KNOWLEDGE OF REAL PROPERTY LAW IS CLEAR REVERSIBLE ERROR | 5 |
|       B.    THE BANKRUPTCY COURT'S ERRONEOUS PRESUMPTION THAT DR. LABGOLD POSSESSED KNOWLEDGE OF REAL PROPERTY LAW IS HARMFUL ERROR | 7 |
|       C.    THE BANKRUPTCY COURT COMMITTED REVERSIBLE ERROR BY RELYING ON STATEMENTS IN THE TRANSCRIPT OF THE DEBTOR'S 341 TRANSCRIPT, WHEN THE EXHIBIT WAS NEVER OFFERED OR ADMITTED INTO EVIDENCE | 8 |
|       D.    THE BANKRUPTCY COURT'S PRESUMPTION OF THE DEBTOR'S REAL ESTATE KNOWLEDGE NEGATIVELY INFLUENCED ITS EVALUATION OF THE ESTATE PLANNING DEFENSE | 10 |
|             1.    The Trustee's Analysis Fails to Consider the Debtor's Change in Financial Circumstances | 11 |
|             2.    Mr. Sandground Testified that he Knew of the California Litigation | 12 |
| III.    RESERVATION OF RIGHTS TO FURTHER CHALLENGE THE TRUSTEE'S POSITIONS AT ORAL ARGUMENT | 13 |
| VI.    RELIEF REQUESTED | 13 |

# TABLE OF AUTHORITIES

| CASES | PAGE |
|---|---:|
| *Cipolla v. Roberts (In re Cipolla)*, 476 Fed. Appx. 301 (5th Cir. Tex. 2012) | *Passim* |
| *Farouki v. Emirates Bank Int'l*, 14 F.3d 244, 249 (4th Cir. Va. 1994) | 4 |
| *In re Kuntz*, 233 B.R. 580 (B.A.P. 1st Cir. 1999) | 5 |

| STATUTES | PAGE |
|---|---:|
| 11 U.S.C. § 727 | 4, 13 |

| OTHER AUTHORITES | PAGE |
|---|---:|
| Federal Rule of Evidence 801 | 10 |
| Federal Rule of Evidence 804 | 10 |
| Federal Rule of Evidence 807 | 10 |

## I. SUMMARY OF THE ARGUMENT

Appellant respectfully submits that the Bankruptcy Court's denial of a discharge pursuant to Section 727(a)(2)(A) of the Bankruptcy Code should be reversed on the basis of clear error of fact and law. The denial of a discharge is an extreme penalty that is not warranted on the record in this case.

In pursuing the extreme penalty of denying a debtor a discharge, the Trustee carries the burden of proof. While the debtor has an obligation to present "satisfactory, explanatory evidence once the [Trustee] has established a *prima facie* case, the ultimate burden rests with the [Trustee]." *Farouki v. Emirates Bank Int'l*, 14 F.3d 244, 249 (4th Cir. Va. 1994). This case presents with the unusual circumstance of the Bankruptcy Court having, *sua sponte*, supplied the evidence it deemed necessary to deny a discharge. The relevant evidence relied on by the Bankruptcy Court consists of a presumption of real estate expertise on the part of the Debtor, and reliance on information that was never made a part of the Record.

These errors of fact and law tainted colored the Bankruptcy Court's conclusion that Dr. Labgold intended to hinder, delay or defraud his creditors. Both errors constitute reversible error and require the Court to reverse the Final Order and remand with instructions to grant a discharge.

## II. ARGUMENT

### A. THE BANKRUPTCY COURT'S ERRONEOUS PRESUMPTION THAT DR. LABGOLD POSSESSED KNOWLEDGE OF REAL PROPERTY LAW IS CLEAR REVERSIBLE ERROR

The Bankruptcy Court erroneously found that "Debtor, while not a real estate attorney, went to law school and would have understood that the effect of a transfer of property to himself and his wife as tenants by the entirety would have been to put the property beyond the reach of the Antara creditors". App. 832. This finding is clear error and based solely on the negative presumption that Dr. Labgold's attendance at law school provided him with this understanding. The Trustee's attempt to justify this presumption by characterizing it as an inference, and not as a formal evidentiary presumption, is likewise flawed because it ignores the ultimate effect of the Bankruptcy Court's finding.

The facts of this appeal are essentially the same as those of *Cipolla v. Roberts (In re Cipolla)*, 476 Fed. Appx. 301, 308 (5th Cir. Tex. 2012), where the Court of Appeals for the Fifth Circuit held that a bankruptcy court committed reversible error by presuming that an attorney possessed knowledge of homestead exemption laws[1] of Texas and Missouri merely because he was an attorney. *See also, In re Kuntz*, 233 B.R. 580, 584-85 (B.A.P. 1st Cir. 1999) (rejecting a bankruptcy court's finding that a debtor's practice of law for 13 years generated knowledge of his obligations in the bankruptcy petition process). The Trustee contends that *Kuntz* is distinguishable because the reviewing court found no evidence of intent to hide the asset or shield it from creditors. Appellee's Brief at 28. The Trustee's attempt is mistaken for two reasons. First, the reviewing court expressly rejected the notion that 13 years of practice equipped the attorney with the appropriate knowledge. *Id*. Second, the court extended this

---

[1] The Trustee's assertion that the Texas and Missouri homestead exemption laws are "more legally intricate" that the effect of a Virginia gift deed on creditors is a gratuitous conclusion based on no facts or authority.

5

analysis by addressing whether the imputation of knowledge, "[i]n the worst case scenario", was sufficient to find bad faith. *Id.* at 585.

Dr. Labgold's case is more compelling than *Cipolla*. Here, the Debtor has no exposure to, or experience with, a Virginia state law or bankruptcy law practice. App. 424. Dr. Labgold is exclusively a patent attorney whose educational background is chemistry and molecular biology. App. 818. The Debtor's legal career is, and has always been, focused exclusively on patent law. App. 1, 2. In *Cipolla*, the attorney passed the bar examinations for Texas and Missouri, and practiced in both jurisdictions where the Homestead Exemption was applicable. Unlike *Cipolla*, Dr. Labgold is not a member of the Virginia Bar and does not engage in a practice involving Virginia law. Instead, he is a member of the Georgia, D.C. and Patent Bars. App. 195, 423. In fact, the absence of **any** evidence to support the Bankruptcy Court's presumption of knowledge confirms the error of the finding. Simply put, there is no reasonable basis for applying the Bankruptcy Court's broad presumption regarding Dr. Labgold's knowledge of Virginia real estate law. *Cipolla v. Roberts (In re Cipolla)*, 476 Fed. Appx. 301, 308 (5th Cir. Tex. 2012).

The Trustee's attempt to minimize the lower court's error by characterizing it as an inference and not a presumption is meaningless. Regardless of the name it is given, the presumption of knowledge ascribed to Dr. Labgold is no different in terms of effect and consequence than the *Cipolla* court's presumption. Both are equally harmful.

It is one thing to understand the change of ownership resulting from a transfer of real property from one individual to the Virginia marital estate of tenancy by the entirety. The change in ownership appears on the face of the gift deed and is evident to a layperson as well as an attorney. However, it is a wholly different legal principle to understand the effect that such a transfer would have on one's creditors. The legal effect of joint real estate ownership is based on

6

Virginia law. It is not based on common knowledge, the face of the gift deed and certainly not on patent law. Indeed, as indicated by the U.S. Court of Appeals for the Fourth Circuit, the effect of property held by a marital estate is a concept of Virginia law and is not common legal knowledge. *See Williams v. Peyton (In re Williams)*, 104 F.3d 688, 690 (4th Cir. Va. 1997) (stating that Virginia law provides that property held by spouses as tenants by the entirety is exempt from individual creditors). There is no controlling legal precedent to support the Bankruptcy Court's conclusion that this knowledge is commonly known by any attorney who attended law school. Therefore, the Bankruptcy Court's conclusion is factually inapposite to the undisputed facts of this case and constitutes clear error.

> **B. THE BANKRUPTCY COURT'S ERRONEOUS PRESUMPTION THAT DR. LABGOLD POSSESSED KNOWLEDGE OF REAL PROPERTY LAW IS HARMFUL ERROR**

The Bankruptcy Court's error is harmful. The harm caused by the Bankruptcy Court's presumption of Dr. Labgold's knowledge of real estate law is the manner in which it colors all factual and credibility determinations made throughout the decision. Indeed, even the Trustee recognizes the importance of the Bankruptcy Court's credibility determinations regarding the purpose and effect of the gift deed, and Dr. Labgold's financial condition at the time of the transaction. Appellee's Brief at 15, 25, 29 and 30. This erroneously presumed understanding of the effect that a gift deed has on a creditor's claims negatively influenced the Bankruptcy Court's conclusions in this case.

In the *Cipolla* case, the Fifth Circuit's reversal was based on the harmful effect that a presumption of a debtor's knowledge has on overall credibility determinations. *Cipolla*, 476 Fed. Appx. at 308. Like *Cipolla*, had the Bankruptcy Court not presumed Dr. Labgold's real estate knowledge, but relied on the facts, the court could have made a "different conclusion." *Id*. In

7

these circumstances, this Court cannot allow the Bankruptcy Court's credibility determinations to stand:

> Here, the bankruptcy court apparently found Cipolla lacking in credibility, a determination to which we ordinarily defer. ***Here, however, that determination could have been influenced by the court's presumption that as a licensed and practicing attorney in both states, Cipolla must have known about the states' homestead exemptions. Further, had the bankruptcy court made a more favorable evaluation of Cipolla's credibility in the absence of this erroneous presumption, it may have found that he did not have an intent to defraud his creditors within the meaning of § 522(o).***

*Id*. (emphasis added). As discussed *supra*, Dr. Labgold's circumstances are more compelling than *Cipolla*'s because he was more distant from the relevant legal principles. However, like *Cipolla*, the Bankruptcy Court's conclusions regarding Dr. Labgold's credibility were influenced by the presumption that he understood the effect that tenancy by the entirety would have on his individual creditors. Indeed, the lower court's credibility determinations were the principal foundation for rejecting the estate planning defense.

### C. THE BANKRUPTCY COURT COMMITTED REVERSIBLE ERROR BY RELYING ON STATEMENTS IN THE TRANSCRIPT OF THE DEBTOR'S 341 TRANSCRIPT, WHEN THE EXHIBIT WAS NEVER OFFERED OR ADMITTED INTO EVIDENCE

The Bankruptcy Court committed error in relying on the 341 transcript because it is not part of the record. At trial, Debtor's counsel merely used the transcript to refresh the chapter 7 trustee's recollection regarding whether he requested the Debtor to provide a copy of the gift deed, and to establish the date of the hearing. App. 356. No other issue was addressed in reference to the 341 transcript and it was not admitted into evidence.

The only discussion regarding the 341 transcript was the following:

> Q: Do you have any recollection of requesting at that time of the debtor a copy of the deed?

| | |
|---|---|
| A: | I may have. I --I typically don't in the case where I know it's in northern Virginia, because we have online access, but I may have. |
| Q: | Okay, would it refresh your recollection if I showed you a copy of the 341-hearing transcript? |
| A: | Sure. |
| . . . | |
| Q: | Okay, you see that you did ask Ms. Regenhardt for a copy of the deed? |
| A: | Yes. |
| Q: | Okay, and the 341 meeting was conducted on August 29th, 2013. Do you see that? |
| A: | That's what the transcript says, yes. |
| Q: | Okay, and would it surprise you to learn that a copy of the deed was transmitted to you on August 30th, 2013? |
| A: | Wouldn't surprise me, no. |
| Q: | Okay, in your experience as a trustee, is that the type of prompt response that's normally exhibited by someone who's attempting to conceal an asset? |
| A: | Not at all. |

*Id*. As the foregoing transcript demonstrates, there was absolutely no discussion regarding whether the Debtor, or his counsel, asserted an exemption for the property. There was also no statement adopting the content of the transcript as part of his testimony. This assertion is mere fiction.

Following the examination by Debtor's counsel, and use of the transcript purely to refresh the witness' recollection as to whether a copy of the deed was requested, no one referred to the 341 transcript at any time throughout the entire trial. Furthermore, the Trustee never proffered the transcript as an exhibit for admission. More importantly, the Debtor was never given an opportunity to object to the transcript's admissibility.

The Trustee's argument for admitting the transcript relies on conflating the Trustee's earlier examination of the witness and the Debtor's use of the transcript to refresh recollection on an entirely different topic. App. 353, 356. However, at no point did the chapter 7 trustee adopt the referenced page as part of his testimony. App. 356. Any assertion otherwise is without merit. In addition to the absence of merit for the Trustee's arguments, Debtor objected to the admissibility of the 341 transcript. App. 151. Likewise, the transcript constitutes hearsay and is not admissible in this case. Fed. R. Evid. 801(c), 804(5) and 807.

As her final position, the Trustee contends that to the extent error occurred, it is harmless. Appellee's Brief at 32. Here again, the Trustee erroneously relies on a portion of the record that actually contradicts her position because Debtor's bankruptcy counsel, Ms. Regenhardt, testified that the entries on Schedule C and the Statement of Financial Affairs were errors on her part. App. 13, 366-67. The Bankruptcy Court accepted her explanation and credited her testimony. App. 829. Therefore, reliance on the 341 transcript, which was not admitted, demonstrates that the Bankruptcy Court's findings are tainted by its negative presumption of knowledge regarding the effect of a tenancy by the entirety on creditors. [2]

### D. THE BANKRUPTCY COURT'S PRESUMPTION OF THE DEBTOR'S REAL ESTATE KNOWLEDGE NEGATIVELY INFLUENCED ITS EVALUATION OF THE ESTATE PLANNING DEFENSE

As explained by the *Cipolla* court, impermissibly ascribing knowledge to the debtor can negatively influence a court's credibility determination. Here, the Bankruptcy Court allowed this negative influence to alter a fair review of the facts and constitutes reversible error. Influenced by the presumption, the Bankruptcy Court was not equipped to objectively evaluate the evidence.

---

[2] Dr. Labgold further notest that on November 3, 2014, the Honorable Keith Phillips successfully conducted a mediation of the chapter 7 trustee's action and the case was settled. *See King v. Labgold et al.*, 14-01018-BFK (E.D.Va. Bankr.), Docket No. 22.

Examples of this error include the lower court's treatment of the Debtor's financial condition at the time of the transaction and Mr. Sandground's knowledge of the pending litigation.

        1.        <u>The Trustee's Analysis Fails to Consider the Debtor's Change in Financial Circumstances</u>

The Bankruptcy Court deemed Dr. Labgold's testimony regarding ability to pay a potential judgment and fund the litigation to be "unpersuasive". App. 832. To reach this conclusion, the Bankruptcy Court focused on the lack of change to the Debtor's "balance sheet" and ignored the unrebutted testimony regarding the increased monthly costs and decreasing monthly income following the Gift Deed transaction. App. 434, 435. For example, the increase in monthly expenditures was driven by two principal obligations, a $22,000/month loan payment to Wells Fargo and increased litigation costs following the failed mediation. App. 435. Both of these events followed March 2013, two months after the transaction. These obligations alone increased Dr. Labgold's monthly cost by approximately $40,000. Such an increase would be financially devastating to anyone but the wealthiest citizens.

The Trustee similarly avoids consideration of the impact of these debts and, instead, focuses on the Bankruptcy Court's finding that neither of these debts, or the reduction in monthly income, results in "the kind of catastrophic financial event that would have caused the Debtor to be insolvent by over $3,800,000". Appellee's Brief at 25; App. 831. The past 10 years disprove the Trustee's position as thousands of individuals have been pushed into bankruptcy by a loss of income and increased expenses. To total amount of the debt was not the catalyst for Dr. Labgold's bankruptcy petition, it was the monthly cost of servicing debt. Millions of individuals have faced either losing their homes in the past decade or filing bankruptcy because of similar circumstances.

### 2. Mr. Sandground Testified that he Knew of the California Litigation

Careful review of the trial transcript reveals that Mr. Sandground did not testify that Dr. Labgold failed to disclose the pending litigation. The Bankruptcy Court, independently questioning Mr. Sandground, asked whether Dr. Labgold disclosed that he was a defendant in the California Litigation when the gift deed was prepared. App. 590. Mr. Sandground initially stated that he did not have an independent recollection the disclosure, but then further testified that the California Litigation "was all part of my discussion to be able to protect my client with an estate plan and to get him to come in and sit down and write a will and take care of his responsibilities as a new husband." *Id.*

The Trustee's argument regarding this issue is internally inconsistent. The Bankruptcy Court reasoned that knowledge of the transaction's occurrence during the pendency of litigation "would have raised a red flag in advising the client as to the consequence of such a transfer." Appellee's Brief at 27; App. 830. Likewise, the Bankruptcy Court made a presumption that Dr. Labgold knew the effect that the transfer would have on his creditors, including plaintiffs in the pending litigation. However, no such burden was placed on Ms. Regenhardt in evaluating the transaction for purposes of the bankruptcy petition. In fact, she testified that Dr. Labgold fully disclosed the transaction to her and that she vetted both Dr. Labgold and Mr. Sandground regarding the estate planning purpose and lack of insolvency at the time, all to her satisfaction. App. 363, 364. Notwithstanding this conclusion, no obligation to identify a red flag was allocated to Ms. Regenhardt. Moreover, Debtor waived the attorney client privilege regarding the preparation of the petition and the Trustee was afforded every opportunity to cross-examine her on this topic and others. App. 380, 381.

### III. RESERVATION OF RIGHT TO FURTHER CHALLENGE THE TRUSTEE'S POSITIONS AT ORAL ARGUMENT

Appellant Marc R. Labgold reserves the right to address additional errors and issues in the Trustee's Brief during oral argument for this appeal.

### IV. RELIEF REQUESTED

Appellant Marc R. Labgold requests that the Court reverse the Bankruptcy Court's denial of discharge under Bankruptcy Code § 727(a)(2) and remand this case with instructions to grant a discharge because the errors committed below cannot be cured by further proceedings.

**CERTIFICATE OF COMPLIANCE WITH RULE 8015(a)(7)(B) or 8016(d)(2)**

 I HEREBY CERTIFY on this 17th day of March, 2015, that this Reply Brief complies with the type-volume limitation of Rule 8015(a)(7)(B) because the Brief contains 3,346 words, excluding the parts of the brief exempted by Rule 8015(a)(7)(B)(iii) or 8016(d)(2)(D).

/s/ Richard W. Driscoll

Richard W. Driscoll

March 17, 2015         Respectfully submitted,

/s/ Richard W. Driscoll

Richard W. Driscoll, Esq. (VSB No. 43469)
Driscoll & Seltzer, PLLC
300 N. Washington St., Suite 610
Alexandria, VA 22314
703.879.2601 Office
703.997.4892 Facsimile
rdriscoll@driscollseltzer.com

/s/ Linda D. Regenhardt

Linda D. Regenhardt, Esq.
Linda Regenhardt, L.L.C.
100 N. Pitt St., Suite 206
Alexandria, VA 22314
703.608.5634
703.518.9931 (fax)
regenhardtl@gmail.com

*Counsel for Appellant, Marc R. Labgold*

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on this 17th day of March 2015, a true copy of the foregoing Reply Brief of Appellant was sent by the ECF system to all counsel of record.

                                  /s/ Richard W. Driscoll

                                  Richard W. Driscoll