IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

MARC R. LABGOLD,                      )
                                      )
                Appellant,            )
        v.                            )
                                      )   Case No. 1:15-cv-00123-GBL-IID
JUDY A. ROBBINS, UNITED STATES        )
TRUSTEE,                              )
                                      )
                Appellee.             )

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Appellant Marc R. Labgold's ("Debtor") Appeal from Bankruptcy Court (Doc. 1). This case involves an appeal of the January 15, 2015 Order in the United States Bankruptcy Court for the Eastern District of Virginia, Case No. 13-13389-BFK, Adversary Proceeding No. 14-01017-BFK, in favor of Judy A. Robbins, United States Trustee ("Trustee"). The Order denied Debtor a discharge of his debts on the grounds that Debtor transferred a home he held to his wife and himself as tenants by the entirety less than one year prior to filing his bankruptcy petition and did so with the intent to hinder, delay, or defraud the Debtor's creditors, in violation of 11 U.S.C. § 727(a)(2). Debtor contended that this real property transfer was "estate planning." Debtor raises two issues on appeal. First, whether the Bankruptcy Court erred in rejecting Debtor's estate planning defense. Second, whether the Bankruptcy Court erred in rejecting Debtor's testimony regarding his ability to satisfy a judgment in the pending California litigation.

The Court AFFIRMS the Bankruptcy Court for two reasons. First, with respect to Debtor's estate planning defense, the Court AFFIRMS the Bankruptcy Court's Order because the Bankruptcy Court's findings of fact concerning the Debtor's intent are supported by the evidence

and are not clearly erroneous. Second, with respect to Debtor's testimony regarding his ability to satisfy a judgment in the pending California litigation,[1] the Court AFFIRMS the Bankruptcy Court's holding because Debtor failed to present evidence showing that his financial condition severely worsened in the six months after he transferred his property, because the Bankruptcy Court did not err in relying on the fact that Debtor did not advise Mr. Mark Sandground, his attorney, of the litigation at the time he transferred his property, and because the Bankruptcy Court did not err in inferring that Debtor knew that transferring the property would put it beyond the reach of his creditors.

## I. BACKGROUND

### A. Pre-trial

This case arises on appeal from the Bankruptcy Court's order denying Debtor Dr. Marc R. Labgold's discharge pursuant to Bankruptcy Code Section 727(a)(2)(A). (Appellant's App. at 1.) Debtor is a patent attorney in the Washington, D.C. area. (*Id.* at 195.) Debtor owns a home located at 2257 Compass Point Lane in Reston, Virginia ("Compass Point property"). (*Id.* at 8.) As partner at Squire Patton Boggs ("Patton Boggs"), a Washington, D.C. law firm, Debtor was a highly-compensated member of the firm. (*Id.* at 196–97.) In 2006, Debtor took a leave of absence from Patton Boggs to co-found a biotechnology company called Antara Biosciences, Inc. ("Antara"), with Dana Ichinotsubo. (*Id.* at 200–01, 207.) During his tenure at Antara, Debtor served as director and CEO of the company. (*Id.* at 202.) Antara began to experience financial difficulties in early-2007, and by May 2007 the company had shut down its operations. (*Id.* at 228.) Debtor resigned as director and CEO of Antara in July 2007 and opened a law practice. (*Id.* at 228.)

---

[1] "California litigation" refers to *Ammini v. Ichinotsubo*, Case No. 1:10-cv-16069, filed in 2010 by former employees of Debtor's company in the Superior Court for the State of California, Santa Clara County, *see infra* at 2–3.

In December 2007, one of Antara's investors sued the company for breach of contract and fraud. (*Id.* at 229.) In 2010, former employees of Antara brought suit ("Antara litigation") against Dana Ichinotsubo and Antara for unpaid wages and other amounts allegedly owed to them by the company. (*Id.* at 510–11.) In September 2012, the former employees amended their suit to include Debtor as a defendant. (*Id.* at 511.) The Amended Complaint included fraud claims against Debtor and sought damages in excess of $1 million. (*Id.* at 89, 262.) In the fall and winter of 2012, the bills associated with the Antara litigation were $20,000–$30,000 per month; however, in early-2013 the bills increased to approximately $60,000–$70,000 per month. (*Id.* at 815–16.)

On December 21, 2012, Debtor married his fiancée of ten years. (*Id.* at 429, 437, 684–85.) Mark B. Sandground, Sr., Debtor's friend and attorney, attended the wedding and served as his witness. (*Id.* at 432.) Following the marriage, Sandground advised Debtor to execute a new will. (*Id.*) In light of Debtor's imminent business travel to Japan, Sandground wanted to ensure Debtor's wife would be provided for in the event that Debtor predeceased her. (*Id.* at 433, 573.) When Debtor expressed that he did not have time to execute a new will before his upcoming travel, Sandground suggested he transfer the Compass Point property from himself as sole owner to himself and his wife as tenants by the entirety through a deed of gift. (*Id.* at 432–33, 588.) Prior to Sandground's recommendation, Debtor was unfamiliar with the deed of gift conveyance or its effect. (*Id.* at 433.)

On January 7, 2013, Debtor executed a deed of gift ("Deed of Gift") prepared by Sandground, transferring ownership of the Compass Point property to himself and his wife as tenants by the entirety. (*Id.* at 681–83.) Debtor and Sandground assert that the Deed of Gift was prepared and executed for the sole purpose of "estate planning." (*Id.* at 432, 573.) As a

domestic relations attorney, Sandground was aware that the provisions of Debtor's earlier will regarding conveyances to his spouse were revoked upon his divorce to his former wife. (*Id.* at 589.) Therefore, following Debtor's return from Japan, Sandground reminded him of the need to complete his estate planning, including executing a new will, on several occasions. (*Id.* at 573–74.)

At the time the Deed of Gift was signed, Debtor's law practice was generating revenues in excess of $200,000 per month. (*Id.* at 699–808.) In early-spring 2013, Debtor successfully resolved several pending litigation matters being handled on behalf of his clients, significantly reducing his workload and monthly cash flow. (*Id.* at 434–35.) Around this same time, efforts to settle the Antara litigation proved unsuccessful. (*Id.*)   As a result, Debtor's legal fees increased to $60,000–$70,000 per month. (*Id.*) In late-April or early-May 2013, Wells Fargo declined to renew Debtor's outstanding note, converting it from an annual payment of interest to a monthly payment of principal and interest in the approximate amount of $22,000. (*Id.* at 435.) The cumulative effect of Debtor's changed financial circumstances was a monthly cash flow deficit.   (*Id.* at 763.)   In late-April or early-May 2013, Debtor discussed his financial circumstances with Sandground, who suggested he consult with bankruptcy attorney Linda Regenhardt, who became Debtor's counsel. (*Id.* at 435–36.)

On July 23, 2013, six months after transferring the Compass Point property, Debtor filed a voluntary Chapter 7 bankruptcy petition. (*Id.* at 1.) Debtor's Summary of Schedules listed $2,817,493.95 in assets and $6,630,453.94 in liabilities. (*Id.* at 6.) On Schedule A, Debtor listed the Compass Point property as being jointly owned by him and his wife, and estimated that the property had equity of just over $100,000. (*Id.* at 8.) On Schedule C, Debtor claimed the entire value of the Compass Point property as exempt from his creditors on the basis that the property

was held in tenancy by the entirety with his wife. (*Id.* at 13.) Section 10(a) of the Statement of Financial Affairs required Debtor to list all property transferred within two years immediately preceding the commencement of the bankruptcy case. Debtor did not list the transfer of the Compass Point property. (*Id.* at 91.) Regenhardt, Debtor's counsel, testified before the Bankruptcy Court that the entries on Schedule C and the Statement of Financial Affairs were her mistakes, and that she had been aware of the transfer of the Compass Point property at the time she filled out the forms. (*Id.* at 366–67, 380–81.)

During the first meeting of creditors, Trustee requested a copy of the Deed of Gift for the Compass Point property and Regenhardt provided a copy to the Trustee in a timely manner. (*Id.* at 355–56, 364.) On January 27, 2014, Trustee filed a Complaint objecting to a discharge in Debtor's bankruptcy pursuant to Section 727(a)(2)(A) of the Bankruptcy Code. (*Id.* at 136.) Count I of the Complaint sought to deny Debtor a discharge pursuant to Section 727(a)(2), on the grounds that the "transfer of the Compass Point property prevented, or [was] intended to prevent, his creditors and the Chapter 7 trustee from receiving or administering estate property" and that the transfer of the Compass Point property was "done with the intent to hinder, delay, or defraud creditors in this bankruptcy case." (*Id.* at 133.) The Complaint included four additional counts, alleging that Debtor should be denied a discharge under 11 U.S.C. §§ 727(a)(3)–(6). (*Id.* at 133–36.)

### B. Trial

The trial was conducted on December 11, 12, and 15, 2014 before the Honorable Brian F. Kenney of the United States Bankruptcy Court for the Eastern District of Virginia (Alexandria Division). (*Id.* at 2.) Debtor testified that when he made the transfer that changed the Compass Point property to a tenancy by the entirety, he had no intent to hinder, delay, or defraud his

creditors. (*Id.* at 433.) Rather, Debtor claimed that the transfer was made for "estate planning" purposes. (*Id.* at 432–33.) When asked what estate planning goal would be accomplished by the Deed of Gift, Debtor responded that it was his understanding that his wife would not have to leave the house if he died. (*Id.* at 525.) Debtor was also asked if any documents related to estate planning were prepared at the time the Deed of Gift was done, to which he responded "no." (*Id.*) Debtor further testified that at the time the Deed of Gift was executed, he believed that the Antara litigation could be settled through mediation. (*Id.* at 431.) Debtor also testified that he believed that in the event of an adverse result in the Antara litigation, he and his co-defendant could have satisfied any judgment rendered. (*Id.*)

Sandground testified that the Deed of Gift was his suggestion. (*Id.*) Sandground also testified that at the time he prepared the Deed of Gift, he was unaware of any of Debtor's financial difficulties, and that Debtor did not disclose to him that he was a defendant in the Antara litigation. (*Id.* at 590.) Sandground further testified that at the time the Deed of Gift was signed, he and Debtor had not discussed bankruptcy, nor was the Deed of Gift executed for any purpose other than estate planning. (*Id.* at 433, 590.)

On January 14, 2015, the Bankruptcy Court issued its findings of fact that there was no dispute that the Deed of Gift was a transfer of Debtor's interest in the Compass Point property and that the transfer occurred within one year prior to the bankruptcy filing. (Appellee's App. at 86; Appellant's App. at 833.) The court stated that "[t]he only issue is whether the transfer was made with the intent to hinder, delay, or defraud the Debtor's creditors." (Appellant's App. at 827.) In determining intent, the Bankruptcy Court looked to the traditional "badges of fraud," which are commonly used bellwethers for making this determination given that direct evidence of intent is often unavailable. (*Id.*) The Bankruptcy Court concluded that "the transfer of the

Compass Point property evidenced virtually all of the badges of fraud." (*Id.*) The court reasoned that the transfer: (1) was to a family member; (2) was without valuable consideration; (3) resulted in Debtor retaining possession and control of the property; (4) was made at a time when Debtor was being sued for substantial sums; and (5) had the effect of putting the property beyond the reach of Debtor's individual creditors. (*Id.* at 828.)

The Bankruptcy Court also found that Debtor's estate planning defense was not supported by credible evidence because: (1) Sandground had not prepared any estate planning documents for Debtor; (2) Sandground did not testify that he had any special expertise in estate planning; (3) Sandground did not ask to see Debtor's existing will; (4) Sandground did not render a bill for estate planning services; and "most importantly" (5) Sandground testified that Debtor did not advise him that at the time of the transfer he was embroiled in the Antara litigation. (*Id.* at 829–30.)

The Bankruptcy Court also concluded that Debtor's testimony on his financial condition and ability to satisfy a judgment in the Antara litigation at the time the Deed of Gift was signed was unconvincing. (*Id.* at 830.) The court reasoned that while Debtor testified that Ichinotsubo would pay one-half of any judgment rendered in the Antara litigation, no testimony or documents were presented as to Ichinotsubo's ability or willingness to do so. (*Id.* at 830.) The Bankruptcy Court's conclusion was bolstered by its finding that it was improbable Debtor could have become insolvent by over $3,800,000 in the six months that transpired between the time the Deed of Gift was executed and when Debtor filed for bankruptcy. (*Id.* at 831.) At the time of the transfer, Debtor's liabilities included a debt to his former spouse in the amount of $2,807,500, of which $559,500 was asserted to be a priority domestic support obligation. (*Id.*) At the time of the transfer Debtor also had two "under water" mortgages for investment

properties in New York and Arizona ($1,614,966.52 and $668,081.42, respectively), and a third mortgage on the Compass Point property ($810,307.74). (*Id.*) Thus, the court found Debtor's testimony on his asserted ability to satisfy a potentially significant judgment in the Antara litigation to be unpersuasive. (*Id.* at 832.)

Finally, the Bankruptcy Court inferred from the facts that Debtor's legal experience, having graduated from law school, would have allowed him to understand the consequences of transferring the Compass Point property. (*Id.*) After considering the circumstances surrounding the transfer of the property, the Bankruptcy Court found that Debtor intended to hinder, delay, or defraud his creditors when he transferred the Compass Point property. (*Id.*) An order denying Debtor's discharge pursuant to Bankruptcy Code Section 727(a)(2)(A) was entered on January 15, 2015. (Appellee's App. at 86; Appellant's App. at 835–36.) Debtor's appeal is now properly before this Court.

## II.  STANDARD OF REVIEW

A district court reviews findings of fact in bankruptcy proceedings under a clearly erroneous standard. FED. R. BANKR. P. 8013. "A finding of fact is clearly erroneous only when 'the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been made.'" *In re Reg'l Bldg. Sys., Inc.*, 320 F.3d 482, 485 (4th Cir. 2003) (quoting *In re Morris Commc'ns NC, Inc.*, 914 F.2d 458, 467 (4th Cir. 1990)). A bankruptcy court's conclusions of law are reviewed *de novo*. *See In re Meredith*, 527 F.3d 372, 375 (4th Cir. 2008).

Whether a debtor had fraudulent intent warranting denial of discharge under 11 U.S.C. § 727(a) is a question of fact. *Ford v. Poston*, 773 F.2d 52, 55 (4th Cir. 1985). While deference is warranted even when the bankruptcy court's factual findings are based on documentary evidence, deference "is particularly appropriate when the bankruptcy court presided over a bench

trial in which witnesses testified and the court made credibility determinations." *In re Official Comm. of Unsecured Creditors for Dornier Aviation (N. Am.), Inc.*, 453 F.3d 225, 235 (4th Cir. 2006).

## III. ANALYSIS

The Court AFFIRMS the Bankruptcy Court for two reasons. First, with respect to Debtor's estate planning defense, the Court AFFIRMS the Bankruptcy Court's holding because the Bankruptcy Court's findings of fact are supported by the evidence. Here, the Bankruptcy Court found that Debtor failed to support his claim of "estate planning" where no will or trust was prepared, his estate planning lawyer never saw Debtor's prior will, and Debtor did not disclose to his estate planning lawyer that he was embroiled in multimillion dollar litigation at the time the Deed of Gift was prepared. Second, with respect to Debtor's testimony regarding his ability to satisfy a judgment in the pending California litigation, the Court AFFIRMS the Bankruptcy Court's holding because Debtor failed to present evidence showing that his financial condition severely worsened by 3.8 million dollars in the six months after he transferred his property.

### A. Estate Planning Defense

The first issue Debtor raises on appeal is whether the Bankruptcy Court erred in rejecting Debtor's estate planning defense. Debtor contends that the Bankruptcy Court erred in rejecting his estate planning defense because it: (1) relied erroneously on a transcript from the first creditor's meeting that was not admitted into evidence; (2) erroneously concluded that Sandground did not have expertise in estate planning; (3) erroneously found that Sandground did not ask to see a copy of Debtor's existing will; (4) erred in finding that Sandground did not render a bill for estate planning; and (5) erred in noting a conflict in testimony as to whether

Debtor had a will at the time of the transfer.

The Court AFFIRMS the Bankruptcy Court's holding denying Debtor's estate planning defense for five reasons. First, the Bankruptcy Court could have arrived at its finding of fact without considering the transcript in question. Second, the Bankruptcy Court found that Mark B. Sandground, Debtor's attorney, had no estate planning expertise. Third, Debtor failed to present evidence showing that Sandground asked to see a copy of Debtor's existing will. Fourth, Debtor failed to present evidence showing that Sandground rendered Debtor a bill for estate planning. Fifth, the Bankruptcy Court did not err in noting a conflict in testimony as to whether Debtor had a will at the time he transferred his property.

### 1. Reliance on Transcript Not Admitted into Evidence

Debtor argues that the Bankruptcy Court erred in rejecting his estate planning defense because the court relied erroneously on a transcript from the first creditor's meeting that was not admitted into evidence. (Doc. 8 at 18.) The Court finds the Bankruptcy Court did not commit reversible error by citing the transcript. Because this is an issue of law, the Court reviews it under a *de novo* standard. The content from the transcript that the court carried into its Findings of Fact read, in relevant part, that Debtor and his counsel advised the Chapter 7 trustee that Debtor claimed the Compass Point property as exempt because it was held as a tenancy by the entirety. (Appellee's App. at 44–46; Appellant's App. at 825.)

Debtor contends reliance by the Bankruptcy Court on this transcript is "particularly egregious" because the transcript was "used to find that the [Debtor] advised the Trustee that the property was claimed to be exempt." (Doc. 8 at 18.) Debtor contends that this finding "undoubtedly colored the lenses" of the Bankruptcy Court's interpretation that Debtor intended to claim the property as exempt to hinder creditors. (*Id.*) Debtor argues that the transcript constitutes hearsay and is inadmissible under Federal Rules of Evidence 801(c), 804 and 807.

(Doc. 15 at 10.) Hearsay evidence is evidence of a statement that was made other than by a witness while testifying at the hearing in question and that is offered to prove the truth of the matter stated. FED. R. EVID. 801(C).

There is no dispute Debtor claimed the Compass Point property as exempt and it is clear from the trial transcript that the Chapter 7 trustee understood the Compass Point property to be exempt. On Schedule C of his bankruptcy petition, Debtor claimed the entire value of the Compass Point property as exempt from his creditors on the basis that the property was held in tenancy by the entirety with his wife. (Appellant's App. at 1.) Debtor signed his bankruptcy petition, attesting to the truth and correctness of the schedules before filing the petition. (*Id.* at 86.) Meanwhile, the Chapter 7 trustee testified before the Bankruptcy Court that the property was exempt because it was held in tenancy by the entirety between Debtor and his wife. (*Id.* at 351.) The Court finds that the Bankruptcy Court could have arrived at its finding of fact without considering the transcript in question. Therefore, the Court finds the Bankruptcy Court did not commit reversible error by citing the transcript.

### 2. Sandground's Estate Planning Expertise

Debtor further argues that the Bankruptcy Court committed clear error in rejecting his estate planning defense because the court erroneously concluded that Debtor had not presented evidence showing that Mr. Mark Sandground had expertise in estate planning. (Doc. 8 at 19.) The Court holds that the Bankruptcy Court did not err in rejecting Debtor's estate planning defense by concluding that Debtor had not presented evidence showing that Sandground had expertise in estate planning. In arguing for reversal on this and the questions of fact that follow, Debtor asks the Court to draw inferences that differ from those reached by the Bankruptcy Court. The Court rejects this invitation because reweighing the evidence presented before the trier of fact is not the role of appellate courts. *See United States v. Poole*, 640 F.3d 114, 121 (4th Cir.

2011). Rather, the clearly erroneous standard of review is significantly deferential to the findings of the trial court, requiring a "definite and firm conviction that a mistake has been made." *In re Morris Commc'ns NC, Inc.*, 914 F.2d 458, 467 (4th Cir. 1990). Deference is "particularly appropriate" when trial court hears witnesses, because it is uniquely positioned to determine the credibility of those witnesses. *In re Official Comm. of Unsecured Creditors for Dornier Aviation (N. Am.), Inc.*, 453 F.3d 225, 235 (4th Cir. 2006). The Court does not find that the Bankruptcy Court committed error in rejecting Debtor's estate planning defense by concluding that Debtor had not presented evidence showing that Sandground had expertise in estate planning.

In rejecting Debtor's estate planning defense, the Bankruptcy Court maintained that Sandground testified that his law practice primarily involves domestic relations, that he did not testify that he had any special expertise in estate planning, that he did not prepare any estate planning documents for Debtor, such as a will or a trust, and "most importantly," that Debtor did not advise him that he was embroiled in the Antara litigation at the time of the transfer,. (Appellant's App. 829–30.) These, along with several other factors, made Debtor's estate planning defense not credible in the eyes of the Bankruptcy Court. (*Id.* at 830.)

There is evidence in the Bankruptcy Court's trial record to contradict the court's conclusion that no evidence was presented to demonstrate that Sandground had expertise in estate planning. For example, Debtor testified that Sandground had prepared estate planning documents for him in the past, and that Sandground advised him to prepare a new will. (*Id.* at 432, 525.) Debtor also presents the fact that Sandground recognized the Deed of Gift as a legitimate estate planning device and was able to prepare an effective deed of gift as evidence of Sandground's expertise in this particular area of law. (Doc. 8 at 19.) While the Court does not

discount this evidence, the Court does not have a "definite and clear conviction that a mistake has been made" by the Bankruptcy Court in its credibility determination of the role of Sandground's expertise in Debtor's estate planning defense. *In re Morris Commc'ns NC, Inc.*, 914 F.2d at 467.

Debtor also points to *In re Laines*, 352 B.R. 397 (Bankr. E.D. Va. 2005), and suggests that the case stands for the proposition that a deed of gift alone establishes the existence of an estate planning objective. (Doc. 8 at 16.) However, in reality the bankruptcy court's holding in this case was more nuanced. The court held that while courts may view a deed of gift between husband and wife as a tool of estate planning, in the context of bankruptcy hearings, courts should closely scrutinize the transaction to verify that it was not undertaken with the intent to hinder, delay or defraud creditors. *In re Laines*, 352 B.R. at 404. Applying the scrutiny counseled in *In re Laines*, the Court holds that the Bankruptcy Court did not err in rejecting Debtor's estate planning defense by concluding that Debtor had not presented evidence showing that Sandground had expertise in estate planning.

### 3. Sandground Asking to See a Copy of Debtor's Existing Will

Debtor argues that the Bankruptcy Court erred in rejecting his estate planning defense because the court erroneously concluded that Debtor did not present evidence showing that Sandground had asked to see Debtor's will. (Doc. 8 at 20.) The Court does not find that a mistake has been made and therefore affirms the Bankruptcy Court's holding on this point.

In rejecting Debtor's estate planning defense, the Bankruptcy Court maintained that Sandground "did not ask to see a copy of the Debtor's existing will (if there was one)." (Appellant's App. 829.) This was amongst the reasons given by the Bankruptcy Court for finding that Debtor's estate planning defense was not credible. (*Id.* at 830.) The Bankruptcy Court trial record shows no evidence to contradict the court's conclusion that no evidence was

presented to demonstrate that Sandground asked to see Debtor's will. In fact, instead of presenting evidence to the contrary, Debtor contends that it was "not necessary for Sandground to review the existing will as it was not relevant to effectuating the estate planning purpose." (Doc. 8 at 21.) Because Debtor has not presented evidence showing that Sandground asked to see Debtor's will and because the Bankruptcy Court judge addressed the issue of credibility, this Court finds that the Bankruptcy Court did not err on this point.

### 4. Sandground Rendering Debtor a Bill for Estate Planning

Debtor argues that the Bankruptcy Court erred in rejecting his estate planning defense because the court erroneously concluded that Debtor had not presented evidence showing that Sandground rendered Debtor a bill for estate planning services. (Doc. 8 at 21.) The Court finds that no mistake has been made and therefore affirms the Bankruptcy Court's holding on this point.

Debtor argues that Debtor's payment of $3,000 on July 15, 2013, to Sandground listed on Question 3 of Debtor's Statement of Financial Affairs represents his payment for Sandground's "estate planning and other services" during 2013. (Doc. 8 at 21.) The Bankruptcy Court cited its finding that Sandground had not rendered a bill for estate planning services as evidence for its conclusion that Debtor's estate planning defense was not credible. (Appellant's App. 829.) The Bankruptcy Court trial record shows no evidence to contradict the court's conclusion. As Trustee points out, no bill was admitted into evidence at trial, and neither Debtor nor Sandground testified at trial that a bill was rendered or paid for estate planning. (Doc. 9 at 34.) This Court finds no error in the Bankruptcy Court's finding of a lack of evidence demonstrating that any such bill was rendered. Accordingly, the Court finds that the Bankruptcy Court did not err on this point.

### 5. Conflict In Testimony

Debtor argues that the Bankruptcy Court erred in rejecting his estate planning defense because the court erroneously concluded that there was a conflict in the testimony as to whether Debtor had a will at the time of the transfer of the Compass Point property. (Doc. 8 at 21.) The Court finds that no mistake has been made and therefore affirms the Bankruptcy Court's holding on this point.

As the Bankruptcy Court observed, there are conflicting statements in the trial record as to whether Debtor had a will at the time of the transfer of the Compass Point property. (Appellant's App. at 830.) Debtor testified at trial that he had "an existing will," and that Sandground was pushing him to do a "new will." (*Id.* at 432, 525.) Yet Sandground also testified at trial that Debtor "had not done a will." (*Id.* at 573.) Importantly, whether Debtor had a will at the time of the transfer was not dispositive in the Bankruptcy Court's rejection of Debtor's estate planning defense. Rather, it was the fact that Sandground did not prepare a will—"the most fundamental of estate planning documents"—for Debtor that was one of the central factors in the Bankruptcy Court's rejection of Debtor's estate planning defense. (*Id.* at 830.)

The Court does not have a "definite and clear conviction that a mistake has been made" by the Bankruptcy Court in finding that there was a conflict in the testimony as to whether Debtor had a will at the time of the transfer of the Compass Point property. Furthermore, the Court notes that, even if the Court found error in the Bankruptcy Court's finding on this point, the error would have no impact, given that the Bankruptcy Court did not ground its rejection of Debtor's estate planning defense on its finding of a conflict in testimony as to Debtor's will. For this reason, this Court finds that the Bankruptcy Court did not err on this point.

In sum, the Court AFFIRMS the Bankruptcy Court's holding denying Debtor's estate planning defense for five reasons. First, the Bankruptcy Court could have arrived at its finding of fact without considering the transcript in question. Second, Debtor failed to present evidence showing that Sandground had expertise in estate planning. Third, Debtor failed to present evidence showing that Sandground asked to see a copy of Debtor's existing will. Fourth, Debtor failed to present evidence showing that Sandground rendered Debtor a bill for estate planning. Fifth, the Bankruptcy Court did not err in noting a conflict in testimony as to whether Debtor had a will at the time he transferred his property.

### A. Ability to Satisfy a Judgment in the Antara Litigation

The second issue Debtor raises on appeal is whether the Bankruptcy Court erred in rejecting Debtor's testimony regarding his ability to satisfy a judgment in the pending Antara litigation. Debtor contends that the Bankruptcy Court erred in rejecting his testimony because it: (1) erroneously found that there had been no change in Debtor's financial circumstances between the date of the transfer of the Compass Point property and his bankruptcy filing; (2) erroneously relied on the fact that Debtor did not advise Sandground of the Antara litigation at the time the property was transferred; and (3) erroneously concluded that Debtor, as an attorney, understood that transferring the property placed it beyond the reach of his creditors.

The Court AFFIRMS the Bankruptcy Court's holding rejecting Debtor's testimony regarding his ability to satisfy a judgment in the pending Antara litigation for three reasons. First, Debtor failed to present evidence showing that his financial condition severely worsened after he transferred his property. Second, the Bankruptcy Court did not err in relying on the fact that Debtor did not advise Sandground of the litigation at the time he transferred his property. Third, the Bankruptcy Court did not err in inferring that Debtor knew that transferring the property would put it beyond the reach of his creditors.

### 1. Debtor's Financial Condition

Debtor argues that the Bankruptcy Court erred in rejecting his testimony regarding his ability to satisfy a judgment in the pending Antara litigation because the court erroneously concluded that there had been no change in Debtor's financial circumstances between the date of the transfer of the Compass Point property and the date of his bankruptcy filing. (Doc. 8 at 22.)

While Debtor contends that the Bankruptcy Court concluded there had been no change in Debtor's financial circumstances between the date of the transfer and the date of his bankruptcy filing, this Court finds no evidence in to support this contention. Rather, the Bankruptcy Court concluded that Debtor's account of his sudden decline in financial stability over the course of the six months between the transfer and his bankruptcy filing was unconvincing. (*See* Appellant's App. at 830–32.) The Bankruptcy Court suggested that the more likely tale was that Debtor's financial difficulties began before he transferred the Compass Point property, and that therefore Debtor's testimony on his asserted ability to satisfy a potentially significant judgment was "unpersuasive." (*Id.* at 832.) The Court will therefore evaluate whether the Bankruptcy Court erred in concluding that Debtor's financial difficulties began before he transferred his property.

The Bankruptcy Court evaluated the financial evidence on the record to arrive at its conclusion. The court noted that at the time Debtor filed for bankruptcy, six months after the date of the transfer, his Summary of Schedules listed \$2,817,493.95 in total assets and \$6,630,453.94 in total liabilities. (*Id.* at 831.) The majority of Debtor's liabilities were long-term. At the time of the transfer, Debtor's liabilities included a debt to his former spouse in the amount of \$2,807,500, of which \$559,500 was asserted to be a priority domestic support obligation. (*Id.* at 831.) At the time of the transfer, Debtor also had two "under water" mortgages for investment properties in New York and Arizona (\$1,614,966.52 and \$668,081.42, respectively), and an additional mortgage on the Compass Point property (\$810,307.74). (*Id.*)

Finally, the Bankruptcy Court pointed out that in late-2012 and early-2013, around the time of the transfer, Debtor was paying substantial sums in legal fees for the Antara litigation and he was facing the prospect of having to satisfy a considerable judgment in the litigation. (*Id.* at 832.)

Debtor contends that his financial footing deteriorated severely after he transferred the Compass Point property. Debtor's gross revenues for his law firm in 2012 totaled $2.3 million and Debtor's 2012 tax returns evidenced an adjusted gross income of $1,062,486. (Doc. 8 at 18.) Debtor's law firm collected January 2013 gross revenues in the amount of $280,000, which, according to Debtor, "foreshadowed a similarly successful year." (*Id.*) Beginning in spring 2013, Debtor testified that he settled a number of the patent cases in which he was representing clients, which resulted in a quick drop in revenue. (*Id.*) Also in spring 2013, litigation costs associated with the Antara litigation increased to $50,000–$70,000 per month. (*Id.*) Finally, monthly payments for a Wells Fargo note increased to $22,000. (*Id.*)

While Debtor presents evidence of his increasingly worse financial condition starting in early-2013, the Court finds that this does not disturb the Bankruptcy Court's finding that his financial situation was poor before Debtor transferred the Compass Point property. Accordingly, the Court finds that the Bankruptcy Court did not err on this point.

### 2. Debtor Advising Sandground Of the Antara Litigation

Debtor argues that the Bankruptcy Court erred in rejecting his testimony regarding his ability to satisfy a judgment in the pending Antara litigation by taking into account the fact that Debtor did not advise Sandground of the litigation at the time he transferred the Compass Point property. (Doc. 8 at 24.) The Court finds that the Bankruptcy Court's finding is not clearly erroneous.

Testimony from the Bankruptcy Court trial indicates that when the Bankruptcy Court questioned Sandground as to whether Debtor disclosed to him that he was a defendant in the

Antara litigation when the Compass Point property was transferred, Sandground responded, "I have no independent recollection of that, Your Honor. It was all part of my discussion to be able to protect my client with an estate plan . . . ." (Appellant's App. at 590.) As is clear from the Bankruptcy Court's Order, the court interpreted Sandground's testimony to mean that Debtor did not advise Sandground of the Antara litigation. (*Id.* at 830, 832.) Debtor disagrees with this interpretation of the trial record, favoring instead the interpretation that Debtor did in fact disclose the pending litigation to Sandground. (Doc. 15 at 12.) The Court finds that the Bankruptcy Court's interpretation is not clearly erroneous as it is reasonable to read the transcript as saying that Sandground had not been advised by Debtor of the Antara litigation. Accordingly, the Court finds that the Bankruptcy Court did not err on this point.

### 3. Debtor's Knowledge as an Attorney

Debtor argues that the Bankruptcy Court erred in presuming that Debtor, a law school graduate, had knowledge that transferring the Compass Point property would put it beyond the reach of his creditors. (Doc. 8 at 25.) The Court finds that the Bankruptcy Court did not err on this point.

Debtor relies on two cases to support its position: *In re Kuntz*, 233 B.R. 580 (B.A.P. 1st Cir. 1999), and *In re Cipolla*, 476 F. App'x 301 (5th Cir. 2012). Both cases are distinguishable. In *Kuntz*, the debtor, an attorney, attempted to convert his Chapter 7 bankruptcy to Chapter 13. 233 B.R. 580 at 581. The bankruptcy court denied the debtor's request because it found that the debtor had displayed bad faith in failing to disclose an inheritance he had received. *Id.* at 582. In arriving at its determination that the debtor's actions constituted bad faith sufficient to deny his request for conversion, the court relied on the fact that "the debtor is an attorney who well knew his obligations" to disclose his inheritance. *Id.* at 584. The bankruptcy appellate panel reversed, finding no evidence to support the bankruptcy court's conclusion that the debtor

intended to shield the asset from his creditors. *Id.* at 585. However, the bankruptcy appellate panel did not decide that a party's status as an attorney is never relevant. Instead, it held that "even if we were to impute debtor with the knowledge of the legal obligation to immediately contact the trustee upon receipt of the asset, there is no evidence to support the conclusion that the debtor intended to hide the asset or purposefully shielded the asset from his creditors." *Id.* at 584.

The Court finds that the inference that Debtor's knowledge that transferring his property would put it beyond the reach of his creditors was not what the Bankruptcy Court relied on to reach its finding of intent. Rather, the Court finds that the Bankruptcy Court relied on its finding that virtually all of the badges of fraud applied to Debtor to reach its finding of intent. *See In re Sandoval*, 153 F.3d 722 (4th Cir. 1998) (citing *In re Woodfield*, 978 F.2d 516, 518 (9th Cir. 1992) (recognizing the "badges of fraud" indicative of a fraudulent transfer)). Therefore, assuming that the Bankruptcy Court erred in raising Debtor's knowledge as an attorney, the Court finds that the error was harmless, given that the Bankruptcy Court relied solely on the presence of the badges of fraud to reach its finding of intent to defraud.

Similarly, in *Cipolla*, the debtor converted non-exempt property to exempt property through differences in two states' homestead exemption laws, and the court made an evidentiary presumption that the debtor, an attorney, had knowledge of homestead exemption laws in these states. 476 F. App'x at 308. When the trustee objected to the debtor's claim of a homestead exemption, the court sustained the objection. *Id.* at 303. The court relied on its presumption regarding the debtor's knowledge to find that the debtor intended to hinder his creditors. *Id.* at 308. The appellate court reversed, finding that "there is simply no legal basis for applying such a broad, formal evidentiary presumption." *Id.* As with *Kuntz*, *Cipolla* is distinguishable from this

case because here the Bankruptcy Court did not rely on its inference that Debtor understood the legal effect of his transfer on his creditors to reach its conclusion that virtually all of the badges of fraud applied to Debtor or to reject Debtor's estate planning defense. Accordingly, the Court finds that the Bankruptcy Court did not err on this point.

In sum, the Court AFFIRMS the Bankruptcy Court's holding rejecting Debtor's testimony regarding his ability to satisfy a judgment in the pending Antara litigation for three reasons. First, Debtor failed to present evidence showing that his financial condition severely worsened after he transferred his property. Second, the Bankruptcy Court did not err in relying on the fact that Debtor did not advise Sandground of the litigation at the time he transferred his property. Third, the Bankruptcy Court did not err in inferring that Debtor knew that transferring the property would put it beyond the reach of his creditors.

## IV. CONCLUSION

The Court AFFIRMS the Bankruptcy Court for two reasons. First, with respect to Debtor's estate planning defense, the Court AFFIRMS the Bankruptcy Court's holding because the Bankruptcy Court could have arrived at its finding of fact without considering the transcript in question, because Debtor failed to present evidence showing that Mark B. Sandground, Debtor's attorney, had expertise in estate planning, because Debtor failed to present evidence showing that Sandground asked to see a copy of Debtor's existing will, because Debtor failed to present evidence showing that Sandground rendered Debtor a bill for estate planning, and because the Bankruptcy Court did not err in noting a conflict in testimony as to whether Debtor had a will at the time he transferred his property.

Second, with respect to Debtor's testimony regarding his ability to satisfy a judgment in the pending California litigation, the Court AFFIRMS the Bankruptcy Court's holding because

Debtor failed to present evidence showing that his financial condition severely worsened after he transferred his property, because the Bankruptcy Court did not err in relying on the fact that Debtor did not advise Sandground of the litigation at the time he transferred his property, and because the Bankruptcy Court did not err in inferring that Debtor knew that transferring the property would put it beyond the reach of his creditors.

Accordingly, it is hereby

**ORDERED** that Appellant Marc R. Labgold's Appeal from the Bankruptcy Court (Doc. 1) is **DENIED**; and it is further

**ORDERED** that the Bankruptcy Court's rulings are AFFIRMED.

**IT IS SO ORDERED.**

**ENTERED** this _____ day of August, 2015.

Alexandria, Virginia

8/___2015

_____ /s/ _____
Gerald Bruce Lee
United States District Judge